CONSTANCE JOANNE RIPP, ADMINISTRATRIX OF THE ESTATE OF RICHARD F. RIPP, DECEASED, APPELLEE, V. CHARLES RIESLAND ET AL., APPELLANTS, IMPLEADED WITH ALICE L. RIESLAND, APPELLEE.

104 N. W. 2d 246

Filed July 1, 1960. No. 34671.

632

*Luebs, Elson & Tracy,* for appellants.

*John A. Wagoner,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Constance Joanne Ripp as administratrix of the estate of Richard F. Ripp, deceased, seeks to recover by this litigation damages for the wrongful death of her husband, Richard F. Ripp, in the collision of an automobile operated by him and an automobile driven by Charles Riesland on the intersection of two country roads 2 miles south and 1⅓ miles east of Wood River which collision and death were, as it is alleged, caused by the negligence of Charles Riesland.

The appellants are Charles Riesland and Elmer H. Riesland. The former is a son of the latter who was the owner of the automobile operated by his son at the time of the collision and it was at that time used and operated by the son by virtue of circumstances which impute to the father any negligence of his son in the operation of the automobile at that time. Charles Riesland will be referred to herein as appellant, his father will be designated by his name, and the two of them will be designated collectively as appellants. Richard F. Ripp will be identified as deceased. The automobile operated by the deceased was a 1950 Ford coach and the automobile driven by appellant was a 1954 Ford coach. The former will be spoken of as the 1950 Ford and the latter as the 1954 Ford. Alice L. Riesland, the wife of Elmer H. Riesland and the mother of appellant, was a defendant in this case in the district court. A verdict in her favor was directed by that court at the close of the case-in-chief of appellee and the case was dismissed as to her. The correctness of the action of the

trial court in that respect has not been contested. There is no cross-appeal in this court and the judgment of the district court as to her has become and is final.

The collision of the automobiles occurred about 9:30 a. m., December 26, 1957, at substantially the center of the intersection of two country roads which intersect at right angles to each other 2 miles south and 1⅓ miles east of Wood River. It was a clear, pleasant winter day. The roads were dry. The traveled surface of the roads at the place of the accident was graveled. The heirs and next of kin of the deceased are his widow, the appellee, who was 21 years of age at the time of the trial; and Richard Eugene Ripp, the son of appellee and the deceased, who was born June 27, 1958. Appellee was dependent on deceased for her support and maintenance at the time of his death. The deceased was at the time of his death 21 years of age and had, according to the life expectancy tables, a minimum life expectancy of 40.70 and a maximum life expectancy of 45.66. The gross income from his farming and livestock operations in 1957 was $2,754 and the expenses thereof amounted to $997. The net balance was $1,757. Deceased assisted some of his neighbors in their farming operations and was paid wages therefor but the amount or any estimate of it is not shown in the record. Deceased furnished services and support to his wife and she and her son are deprived of the services and support of the deceased by his wrongful death.

The first cause of action of appellee seeks damages because of the alleged wrongful death of deceased and the second cause of action is for the recovery of the amount of the expense occasioned by the injuries to and the death of deceased. The specifications of negligence charged against appellant by appellee included in substance the following: The operation by appellant of his 1954 Ford at an excessive rate of speed in view of the conditions then and there existing; failure of appellant to decrease the speed of his 1954 Ford sufficiently

to enable the 1950 Ford of deceased to pass through the intersection in safety; failure of appellant to have and maintain a proper lookout for traffic approaching and entering the intersection from the right; failure of appellant to apply the brakes of his 1954 Ford and thereby avoid the collision of it with the 1950 Ford of deceased; and failure of appellant to yield the right-of-way to deceased who was entering the intersection from the right.

The substance of the defenses of appellants is a denial of the claims of appellee except her status and capacity to maintain this action and that deceased died December 26, 1957, as a result of injuries he sustained in the collision of automobiles at the time and place alleged by appellee, and a plea of contributory negligence of the deceased of a nature and degree sufficient to defeat recovery in the case by appellee and detailed in numerous specifications which will, as necessity requires, be detailed hereafter in the consideration of errors assigned by appellants. Appellee traversed the new matter in the answer. The result of a trial of the issues was a verdict for appellee on each of her causes of action. The motion for a new trial was denied and judgment was rendered on the verdict. This appeal presents the record for review.

The deceased was operating his 1950 Ford on the east-west road traveling west toward the intersection described above immediately before the collision at approximately the center of the intersection. He was the only occupant of his vehicle. Appellant, unaccompanied, was driving his 1954 Ford on the north-south road north toward the intersection shortly before the collision of his automobile and the automobile of the deceased. The traveled portion of the east-west road east of the intersection was 23 feet and the traveled portion of the north-south road south of the intersection was 22 feet. The area of the intersection of the roads was enlarged because it was bounded by curved lines. There were no

stop signs or traffic control devices of any kind at the intersection. The roads were level there and for some considerable distance either direction from it.

There was an eyewitness of the circumstances of the tragedy, the basis of this litigation. She viewed it from the clothesline north of her home which is south and west a short distance from the south-west part of the intersection where the collision occurred. She was produced and examined by appellee. The substance of her testimony follows: She was near the clothesline which was north of the house. She saw an automobile about 9:30 the morning of the accident traveling on the north-south road toward the north about at the lilac bushes on the west side of the road and south and east of the home of the witness. She observed the automobile until it entered the intersection and the collision occurred. The speed of it was about 50 miles per hour and she did not observe that the rate of the speed of it varied or changed during the time she saw it. The driver of the automobile was appellant. The other automobile involved in the collision came from the east. She estimated that when she first saw the westbound automobile it was probably a block or a block and a half east of the intersection but she also located it as near a cedar tree on the south of the east-west road 190 feet east of the place of the collision of the automobiles. The distance from the place of the collision to where a line from the clothesline near which Mrs. Best was standing to the northeast directly over the cedar tree mentioned above intersected the center of the east-west road was 340 feet. She watched the automobile as it traveled west to the intersection and to the place of collision and her estimate of its speed was approximately 50 miles per hour. She observed no change in its rate of speed while she watched it. The driver of the westbound automobile was the deceased. The witness saw it soon after she first saw the automobile of appellant. She first saw his automobile, the 1954 Ford, when it was near

the lilac bushes and about the same time she saw the automobile of the deceased, the 1950 Ford, coming from the east toward the intersection. There were trees and a lot of brush around her home on the west side of the north-south road. A mailbox was in front of her home along the north-south road and there were trees, brush, and lilac bushes 7 or 8 feet high at least along the west side of that road south of the mailbox. The witness said someone told her it was about 130 feet from the lilac bushes to the intersection and 30 or 40 feet north from the lilac bushes to the mailbox. The witness had operated automobiles with speedometers, had given attention to speed of automobiles while she was operating them and riding in them when driven by others, and she was able to estimate the speed of such a vehicle when it was moving in the range of her vision. She had driven north on the north-south road toward and approaching the intersection during the time she lived near it, she had made observations while so doing as to the visibility to the east of the intersection, and she knew that there were trees and brush substantially to the intersection that interfered with or prevented vision to the east of the intersection. The witness when she saw the automobiles the day of the collision was standing on the ground near the clothes-line and the elevation of the surface of the ground at that location was about 5 feet higher than the surface of the road east of the intersection. She estimated the lapsed time from when she first saw the automobiles approaching the intersection until the collision as possibly 2 or 3 seconds. She said there were a lot of trees and brush along the south of the east-west road east from the intersection.

A member of the Nebraska Safety Patrol was notified of the collision of the automobiles and he arrived at the place of the accident at 9:55 a. m., December 26, 1957. The 1954 Ford was north and west of the center of the intersection about 90 feet from the place of the

collision in a field facing slightly to the southeast. It had been propelled across the ditch on the north side of the east-west road. Tracks from the place of the contact of the automobiles indicated that the 1954 Ford had gone in a substantially straight line in a northwesterly direction across the ditch into the field and turned around facing as above stated. The tracks stopped on the north edge of the east-west road and commenced again at the north outer edge of the ditch. There were no tracks in the ditch. The 1950 Ford was in the ditch along the north side of the east-west road facing north 74 feet west and slightly north of the place of the impact of the automobiles. The tracks which the investigator concluded were made by the 1950 Ford were from the place of the collision northwesterly to where it struck the north bank of the ditch, gouging out a depression in the earth, and the witness thought it either rolled over or swirled in going directly west from the point where it hit to where it came to rest. The witness did not certainly know how the 1950 Ford got from where it went into the ditch and hit the bank to the position where it finally came to rest. The witness said he drove some distance from the east toward the intersection on the east-west road the day of the accident and found the view relative to the intersection was about the same as the view of one traveling on the north-south road from the south toward the intersection, that is, that most of the vision was obscured. However, he said there were more trees and shrubbery on the north-south road south of the intersection and on the east side of it than there were on the south side of the east-west road east of the intersection and that vision of a traveler was more obscured on the north-south road. He drove from a distance south of the intersection north to it and observed that most of the view to the right or east was blocked and that trees and brush at the southeast part of the intersection out into the windbreak interfered with the view in that direction.

There was evidence that south of the intersection there was a private driveway east from the north-south highway that was 195 feet south from the south line of the east-west road to the center of the driveway; and that it was possible, if one was in the right position on the north-south highway looking to the northeast, to see the east-west highway for a distance of about 87 feet identified by a bush on the west and a cedar tree on the east. It was estimated that the tree was 189 feet from the intersection. A witness who lived east of the north-south road about 80 rods south of where the collision occurred questioned the evidence that the private driveway was 195 feet south of the intersection. He said he thought that was incorrect. He said it was about 125 to 130 feet from the fenceline south of the east-west road at the intersection south to the private driveway. He also said that if one was in the opening made by the driveway there was a time, but not for long, when he could catch a vision of the northeast to the cedar tree but then he would lose it: "If you move, it's closed off." This witness said he was about 80 rods away in his home when the collision occurred and it sounded like an explosion. He looked from a window toward the intersection and saw only a fog of dirt. He went there. The 1950 Ford was in the north ditch about 75 feet west of the intersection. It was on fire and he put out the fire. The 1954 Ford was northwest of the intersection in the field with its front to the south. Its motor was operating and he turned it off. Appellant was under the dash in his automobile. He appeared to have passed out and was in a daze. The first thing he said was he wanted to know what happened. The 1954 Ford made no tracks from the place of collision. It just scraped on the ground on its way into the field. Witness could not find where or when it turned around. There was glass in the intersection and the driveshaft of the 1954 Ford was wholly detached and was by the telephone pole at the northwest corner of the intersection. The

windshield was in the center of the road north of the intersection at least 100 feet. It was north and east of where the 1954 Ford finally stopped. The front of the 1950 Ford hit the north bank of the ditch north and west of the intersection and made a depression in the bank 6 or 8 inches deep. There were no other marks at or from that location. The gouged-out place in the bank of the ditch was 65 feet from the point of collision. The automobile either jumped or flipped and landed on its wheels where it came to rest. There is evidence the the speed of the 1950 Ford was, at the time of the collision, 67½ miles per hour; that the speed of the 1954 Ford at that time was 36 miles per hour; that the automobiles collided at right angles to each other; and that the front of the 1950 Ford struck the 1954 Ford on its right side approximately opposite the end of the rear seat.

There was substantially no damage to the front of the 1954 Ford. There was injury to its heavier parts including the framework, the body, the chassis, the frames on the under side of it, and to the rear springs. It was substantially destroyed. The rear suspension, that is the rear wheels and springs, was detached from it. The right part of the chassis frame was bent and twisted toward the left side and the left chassis frame had a large break in it. The crossmembers of the frame were broken. The front part, including the hump, was crushed from the right to the left. The braces over the hump were cracked. The back seat was twisted so that its right side was moved back a foot or a foot and a half. The whole body framework and the windshield posts were twisted, kinked, and bent. The right side of the top was crushed and distorted. The driveshaft was entirely detached and came to rest in the northwest part of the intersection. The windshield was broken off and was at least 100 feet north of the intersection. The chassis of the 1954 Ford was of box-type construction with numerous cross braces from one side of the frame to

the other and the material of these was high-grade mill structural steel made to resist tremendous external tensions and impacts. The front of the 1950 Ford was badly and extensively damaged and the parts thereof were driven back and to the right indicating that the principal place of contact by it with the 1954 Ford was at the left front of the 1950 Ford. The record does not detail the damage to it except what is exhibited by pictures of it.

The deceased left his home south of Alda between 8 and 9 o'clock the morning of the accident for the purpose of going to where his father lived a mile south and straight west of the place of the accident. Deceased was familiar with the road on which he traveled that day, the intersection where the collision occurred, and the surroundings of the intersection because he had frequently used the road. He was then 21 years of age. He was seriously injured in the collision and his injuries were the cause of his death that day.

Appellant was 22 years of age at the time of the accident. He was a 1954 graduate of Wood River high school, served in the Marine Corps thereafter until 1956, and assisted his father in his farming operations from the time of his discharge until the fall of 1957. He enrolled as a student in the Radio Engineering Institute of Omaha on September 11, 1957, and he had regular class attendance in that institution until he came home for the 1957 Christmas vacation except when he was ill in a hospital. His home was with his parents 1½ miles south of the place of the accident. He was operating the 1954 Ford with which he was familiar on what was called the main-traveled road to Wood River on an errand in anticipation of returning to school in Omaha the following day. He had frequently traveled the north-south road and the intersection where the collision occurred. There were trees and bushes along the east or right side of the road as he proceeded toward and to the intersection. These almost entirely obscured

his view to the northeast and to the east of the intersection except there were some places where a brief and generally imperfect view could be had to the northeast and any view of that kind was momentary and then entirely lost. A private highway to the east of the north-south road a considerable distance south of the intersection permitted a view to the northeast and of a part of the east-west road. He looked in that place as he went north the morning of the accident but there was no traffic to be seen by that observation. He made such observations as the conditions permitted as he proceeded north that day. The speed he was traveling was about 50 miles per hour but as he went north he gradually decreased it until he estimated it at 35 miles per hour when he reached the lilac bushes on the west or left side of the road which are mentioned above. He was at all times driving on the right side or lane of the road. It was about 3 car lengths, estimated as approximately 54 feet, south of the south line of the intersection, sometimes referred to as the fenceline, when there was some view past the obstructions at the southeast part of the intersection which could be made for traffic coming from the east. He then had the brake lightly applied and the speed of the 1954 Ford he thought was about 20 miles per hour. He looked to the east and could see about 3 car lengths, the same distance he estimated he was south of the east-west road. He saw no traffic from the east. He looked west and saw no traffic but he did see Mrs. Best standing near her clothesline. His 1954 Ford was moving toward the intersection in this brief interval. He looked east again as he came near or into the intersection and he for the first time realized there was an automobile traveling from the east toward the intersection. He thought he could avoid an accident by increasing his speed and turning his automobile sharply to the left which he attempted to do. That was the last he remembered. There is no evidence that the speed of the 1954 Ford was in-

creased when appellant attempted to use the accelerator or that his attempt in that regard had anything to do with causing the collision. Appellant testified he was in the intersection when he attempted to accelerate the speed and to turn to the left. In a deposition taken before the trial appellant said when he looked west and saw Mrs. Best he was about even with her mailbox which he estimated was probably 20 feet from the intersection. He later made an investigation of the situation and found he was mistaken as to the location of the mailbox and that in fact it was about 90 feet south of the intersection.

The issues in this case were which of the parties had the right-of-way at the intersection where the collision occurred and which of the parties was guilty of negligence which proximately caused or contributed to cause the accident involved herein. There is evidence that appellant had knowledge of all the conditions and hazards existing on the highways, the intersection of them, and the surrounding area concerned in the occurrence, the basis of this litigation; that he operated his 1954 Ford at a speed of about 50 miles per hour to and into the badly obstructed intersection where the collision occurred; that he did not decrease his speed; that there was an absence of any indication that he applied the brakes on his 1954 Ford; that in fact he stated he removed his foot from the brake pedal and attempted to accelerate the speed when he first realized that there was an automobile approaching from the east or the right; that the collision occurred immediately thereafter in about the center of the intersection which fatally injured the deceased; that the 1950 Ford was about the same distance from the intersection approaching it from the east and was traveling at about the same speed as appellant was; that he did not see the 1950 Ford until an instant before the collision; and that there was an opportunity for observation of the east-west road at least 54 feet east of the intersection by a traveler on the

north-south highway when he was a distance of 54 feet south of the intersection. The proof of negligence of appellant was such that reasonable minds could differ as to the correct inferences or conclusions to be deduced therefrom. It was sufficient to sustain a finding for appellee of the negligence of appellant as the proximate cause or a contributing cause of the collision.

Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496, states: "If there is any evidence which will sustain a finding for the litigant having the burden of proof in a cause the trial court may not disregard it and decide the case as a matter of law." See, also, Crunk v. Glover, 167 Neb. 816, 95 N. W. 2d 135.

In Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352, it is said: "All travelers are required to exercise due care in coming to and crossing an intersection of public highways."

Bezdek v. Patrick, 167 Neb. 754, 94 N. W. 2d 482, declares: "It is the duty of the driver of an automobile when approaching an intersection to look for other automobiles approaching and to see those within the radius which denotes the limit of danger." See, also, Nichols v. McArdle, *ante* p. 382, 102 N. W. 2d 848.

Appellants have not assigned herein that the evidence is not sufficient to sustain the verdict finding them guilty of negligence. They only argue, in support of their assignment, that it was error for the district court to deny their motion for a directed verdict at the close of the evidence, their motion for a judgment notwithstanding the verdict, and their motion in the alternative for a new trial, that the case should not have been submitted to the jury because the contributory negligence of deceased was as a matter of law more than slight in comparison with any negligence of appellants and that defeats any recovery by appellee. The issue of negligence of appellants was under the circumstances of this case one of fact for determination by the jury.

The 1950 Ford came to the intersection from the east which was to the right of appellant. There is evidence sufficient to justify a finding that the automobiles of the parties approached the intersection at approximately the same time because of which deceased may have had the directional right-of-way, but this was not established conclusively and which of the parties had the right-of-way at the intersection was a question for the consideration of the jury. If one assumed that deceased had it, there are, nevertheless, important considerations. In Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596, it is stated: "It was not intended to make a person entering a street intersection an insurer against a collision irrespective of the negligence of the other party." There is a presumption that deceased had and kept a lookout for traffic before and as he entered the intersection. There is no evidence to the contrary and all travelers are required to exercise due care in coming to and traveling upon an intersection of public highways. Bell v. Crook, *supra*. However, there is no presumption that deceased saw or did not see the 1954 Ford at or near the intersection. It is said in Spaulding v. Howard, 148 Neb. 496, 27 N. W. 2d 832: "It is a question of fact as to the negligence of the parties as to what they did or did not see, or what they should or could have seen." See, also, Bell v. Crook, *supra*. However, circumstances shown by the record permit a conclusion that deceased did not see the 1954 Ford traveling toward or in the intersection. There is evidence produced by appellee that the 1950 Ford traveled toward and to the place of the collision at about 50 miles per hour. An eyewitness was watching it continuously and saw no change or decrease in its speed. There was no indication observed that it varied its course or that its brakes were applied. There were no tire or skid marks in the intersection at or near the place of the impact showing the use of brakes east of the place of the accident. There is evidence the automobiles collided at right angles to each

other. There was also evidence introduced by appellants that the speed of the 1950 Ford was more than 65 miles per hour as it traveled to the place of the collision. There may be some corroboration of this by the character, nature, and extent of the destruction of the 1954 Ford which was struck on its right side about opposite the back seat. With the exception of the extreme front it was literally disintegrated. The facts of the unusual performance of the 1950 Ford after the collision until it came to rest are significant of its great speed and momentum at the time of the impact.

In Long v. Whalen, *supra,* this court said: "It is a part of the law of the road in this state that when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left must yield the right-of-way to the vehicle on the right if it is traveling at a lawful rate of speed. * * * One having the right-of-way may not on that account proceed with disregard of the surrounding circumstances. He has the right-of-way over traffic approaching on his left, but he is not thereby relieved from the duty of exercising ordinary care to avoid accidents. * * * The drivers of vehicles approach an intersection at approximately the same time whenever the two vehicles are in such relative position that upon appraisal of all factors it should appear to a man of ordinary prudence approaching from the left that there is danger of collision if he fails to yield the right-of-way."

Bell v. Crook, *supra,* contains the following: "The requirement in this state is that when a motorist enters an intersection of two highways he is obligated to look for approaching motor vehicles and to see those within that radius which denotes the limit of danger. If he fails to see a motor vehicle not shown to be in a favored position, the presumption is that its driver will respect the right-of-way of the motorist and the question of his contributory negligence in proceeding to cross the intersection is a question for the jury."

The appellee does not contend that the evidence in this case does not make the issue of contributory negligence of deceased a question of fact to be decided by the jury. Appellee says in her brief that deceased as he approached the intersection from the east could have seen an automobile on the north-south road traveling toward the intersection; that there were several places which were available to him for this purpose; and that if he looked, and it is presumed he did, and did not see the 1954 Ford which was not in a favored position, any negligence of the deceased was for determination by the jury as shown by the authorities cited by appellee. Appellee also argues that a finding could properly have been that the deceased had been traveling 50 miles per hour; that he looked to the left and saw appellant had decreased the speed of his 1954 Ford; and that any negligence from such facts necessarily was for the jury to determine. The conclusion of the argument of appellee on the issue of contributory negligence is that whether or not any of the acts of the deceased preceding the accident constituted contributory negligence was at most a question for the jury. It is indisputable, therefore, that the concession of appellee by these arguments and conclusion referred to above is that it was an issue for the jury to determine whether or not the acts or omissions of the deceased as shown by the evidence constitute contributory negligence which proximately caused or directly contributed to the cause of the collision. This was the conclusion of the trial court and it was correct in submitting that issue to the jury for solution. The argument of appellants is that contributory negligence of deceased was established as a matter of law and this is the basis of their assignment that the verdict is not sustained by the evidence and that the case should have been decided by the trial court in favor of appellants as a matter of law. Appellants are incorrect in this and their argument and conclusion cannot be sustained. The issue of contributory

negligence in this case was one of fact for solution by the jury and not the court.

Appellants argue that the trial court abused its discretion by directing an improper question to a witness produced by appellants during the cross-examination of the witness and by making prejudicial remarks in the presence of the jury concerning the improper question, and that thereby an attack was made upon the credibility of the witness and the value of his testimony. They made an objection to the trial court's "interposing of questions and arguing with the witness on the stand." The record does not exhibit any other objection made by appellants to any of the questions asked or comments made by the trial judge. It is not necessary to determine the contention of appellants in this regard because of the disposition made of this appeal as hereafter stated. A recurrence of the matter complained of is not probable on any retrial of the case.

A contention made by appellants is that the failure of the trial court to instruct the jury concerning limitations of speed of vehicles contained in section 39-723, R. S. Supp., 1957, was error. This section prohibits the operation of a motor vehicle on a highway in a rural area at a "speed greater than is reasonable and proper, having regard for the traffic, the use of the road, and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person * * *." Appellants concede the trial court did instruct the jury as to the limitations of speed of vehicles on a highway as contained in section 39-7,108, R. R. S. 1943. It states a prohibition in this manner: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." The language of the instruction given by the trial court contained the language last quoted above and the words thereof "under the conditions then existing" were inclusive of and definite enough to include the import of the words "the condition of the road" contained in

section 39-723, R. S. Supp., 1957. Appellants emphasize that deceased was traveling upon the lesser traveled of the two roads and that he was familiar with them and the intersection. The record contains no proof that there was any less traffic or use of the east-west road than there was on the north-south road. There is no showing of the traffic or use of either of the roads except the deceased was traveling on the east-west road and appellant was traveling on the north-south road the day of the collision; that they had previously used the roads; and that they were familiar with the intersection. The objection of appellants in this respect is not a valid one.

The correctness of an instruction given the jury on the subject of right-of-way at an intersection of highways is not contested except appellants say it was error for the trial court to omit therefrom, as it did, the provision of the statute that "The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have * * *." § 39-751, R. R. S. 1943. Appellants requested two instructions on this subject. The first included the provision last quoted above. It was refused by the trial court. The other omitted the quoted provision and the trial court gave an instruction to the jury in the exact language of the instruction proposed by appellants. They may not complain that the district court accepted that version of the law as proposed by them even though it was an incorrect or incomplete statement of the law. If a litigant requests more than one inconsistent instruction he may not complain because the court adopts and gives one of them and refuses the other which was inconsistent with the one given. A litigant who presents to the court different and antagonistic instructions, so that if one is given consistency requires that the other be refused, cannot be heard to complain of the action of the court in erroneously deciding between the two. A litigant may not be heard to question the

correctness of any action which he requested or caused. In Missouri P. Ry. Co. v. Fox, 60 Neb. 531, 83 N. W. 744, this court said: "Where several instructions to the jury in the trial of a case are requested, some of which are inconsistent with the others, and involve different theories of the case, a party submitting such instructions can not complain of the trial court in adopting one of the theories of the case, and giving the instruction applicable thereto, and refusing those which were inconsistent with the ones given. * * * It is a sound and salutary principle that a party can not be heard to complain of an error which he himself has been instrumental in bringing about." See, also, Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367; Schlueter v. School Dist. No. 42, 168 Neb. 443, 96 N. W. 2d 203.

The substance of a part of the charge to the jury was that it was the duty of a motorist to have his vehicle under reasonable control so as to enable him to avoid colliding with other vehicles if the drivers thereof were exercising due care. It was the duty of a motorist to keep a reasonably careful lookout so that he might be able to avoid a collision with other vehicles lawfully upon the highway. It was for the jury to find from the evidence whether these duties were violated by the deceased or appellant; and if the jury found that there was such a violation, it would not in and of itself constitute negligence but would be a circumstance which the jury could take into consideration in deciding whether the deceased or appellant was guilty of negligence. The instruction is attacked by appellants as error because of their belief that the failure of deceased to look to his left in approaching the intersection when by looking he could have seen and avoided the collision which occurred was more than slight negligence as a matter of law and prevents any recovery by appellee. Appellants tendered an instruction in harmony with their belief in this respect and its refusal is a part of their complaint. There is a fatal error in the argument of

appellants. There is no proof that deceased did not look or that he did not have and keep a reasonable lookout as he approached and entered the intersection. It is because of this presumed that he did and that he in that respect used due care. Bush v. James, 152 Neb. 189, 40 N. W. 2d 667; Bell v. Crook, *supra*. It is also true, as the instruction of the trial court stated, that the violation of a safety regulation established by statute or ordinance is not generally negligence as a matter of law but such a violation is a fact which may be considered in connection with all the other evidence in the case in deciding the issue of negligence. Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607. The complaint of appellants under the circumstances of this case is without foundation.

Appellants tendered an instruction concerning the doctrine of sudden emergency. It was refused by the trial court and its action is assigned as error. The first mention of a sudden emergency in this case was when the instruction relating thereto was requested. This doctrine cannot be invoked in a negligence case unless there is evidence to support the conclusion that a sudden emergency actually existed and it cannot be invoked by one who has brought that emergency upon himself by his acts or omissions or who has not used due care to avoid it. Stanley v. Ebmeier, 166 Neb. 716, 90 N. W. 2d 290. The present case does not conform to the specifications of sudden emergency. It involves only issues of negligence, contributory negligence, and an application of the doctrine of comparative negligence.

The evidence is such that a finding that either the deceased or appellant had the right-of-way at the intersection would have been sustained. It was an important question and one for jury determination. Appellants requested that the jury be instructed that a motorist having the right-of-way may not because of that fact proceed with disregard of the surrounding circumstances nor is he thereby relieved from the duty of exercising

ordinary care to avoid an accident. This request correctly stated a recognized rule of law. Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571. The jury may have believed that if deceased had the right-of-way at the intersection, this fact assured him safe passage across it at all events without exercise of caution or prudence on his part. The tendered instruction could not have prejudiced appellee because it was general and applied equally to the conduct and duty of deceased and appellant. In the trial of an action concerning a collision of automobiles on an intersection of highways which involves issues of negligence and contributory negligence this court has said that the jury should be fully and precisely instructed as to the relative and reciprocal rights and duties of the operators of automobiles in entering and using the intersection. Bezdek v. Patrick, *supra.* The instruction requested by appellants should have been given to the jury.

Appellants in their detailed specifications of contributory negligence asserted: Deceased failed to decrease his speed when approaching and crossing the intersection, when special hazards existed with respect to other traffic, and where special hazards existed by reason of highway conditions, contrary to section 39-7,108, R. R. S. 1943; and that deceased operated his automobile until the collision at an excessive, dangerous, and unlawful speed having regard for the traffic, use of the road, and the condition of the road and at a speed such as to endanger life and limb of other persons, that is to say in excess of 65 miles per hour, contrary to sections 39-723, R. S. Supp., 1957, and 39-7,108, R. R. S. 1943.

The instruction of the court concerning the plea made by appellants of contributory negligence of deceased said that appellants stated: That deceased failed to exercise ordinary and reasonable care while approaching and entering an intersection where his view was obstructed; failed to keep and maintain a proper lookout; operated his automobile on a highway at a greater speed

than was reasonable .and proper under the conditions existing toward the east of the intersection on the south side of said highway; failed to apply his brakes and avoid a collision with the automobile operated by appellant; failed to yield the right-of-way to appellant. who first entered the intersection; and that the negligence of deceased was more than slight when compared with any negligence of appellant.

The instruction completely eliminated from the consideration of the jury the specifications of negligence of deceased that he failed to decrease his speed which was in excess of 65 miles per hour when approaching and crossing the intersection; that he failed to decrease his speed where special hazards existed by virtue of highway conditions; and that the speed of the automobile of deceased was excessive, dangerous, and unlawful having regard for the use and condition of the road. These specifications of negligence were each pleaded as contributory negligence of deceased and they were each supported by evidence. The jury was given an instruction that appellee had charged that appellant had failed to decrease the speed of his automobile so as to enable the automobile of deceased to pass through the intersection with safety, and the omission from the instruction that appellant had alleged a similar failure of deceased may have misled the jury, causing it to apply the recited requirements of the law only to appellant and not to deceased. In order for the jury to have applied the rules contained in the given instruction relative to reduced speed to deceased and for the jury to have found him guilty of negligence in that regard, the jury would have had to ignore and circumvent the charge of the trial court that before appellants could avail themselves of the defense of contributory negligence they must have proved that deceased was guilty of negligence "* * * in one or more of the particulars set out in their answer * * *." It cannot be assumed that the jury would disregard that charge. The instruction of the trial court as

to what appellants alleged as to the speed of the automobile of the deceased was that he operated his vehicle on a highway "at a greater speed than was reasonable and proper under the conditions existing towards the east of the intersection * * *." This was too restricted, general, and an unfair representation of the allegations of the speed of the automobile of deceased. It was plainly alleged in the answer that the speed of the automobile of deceased was in excess of 65 miles per hour and there is evidence supporting that allegation. It is the duty of the trial court without a request to instruct the jury as to each issue presented by the pleadings and supported by evidence. A litigant is entitled to have the jury charged as to his theory of the case as shown by pleading and evidence and a failure in this respect is prejudicial error. McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923; Maska v. Stoll, *supra;* Southwell v. DeBoer, 163 Neb. 646, 80 N. W. 2d 877; Phillips v. State, 167 Neb. 541, 93 N. W. 2d 635; Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551.

A part of the charge to the jury states: "By 'slight negligence' is meant small or little negligence" and "By 'gross negligence' is meant great or excessive negligence." This court disapproved an instruction containing the language quoted above in cases of the same character as this litigation. Bezdek v. Patrick, *supra;* Brackman v. Brackman, 169 Neb. 650, 100 N. W. 2d 774.

The charge of the trial court in this case did not inform the jury by any language contained therein that if, in comparing the negligence of the parties, the negligence of deceased was found to exceed slight negligence in any degree under the circumstances or if the negligence of appellant was found to be in any degree less than gross negligence under the circumstances, then the negligence of deceased, however slight, would defeat any recovery by appellee. The instruction given on this subject stated: "If you find that both drivers were

negligent, the plaintiff (appellee) cannot recover if upon comparison of the negligence of Richard F. Ripp (deceased) with that of Charles Riesland (appellant) you find that the negligence of Charles Riesland was less than gross." If there had been inserted therein after the second or last appearance of the word "find" the clause: "deceased's negligence was more than slight or" then the instruction would have been the same as the standardized instruction No. 64 adopted by the association of district judges of the state. However, the clause: "deceased's negligence was more than slight or" was entirely omitted from the instruction given to the jury.

Section 25-1151, R. R. S. 1943, in part provides that in a case of this class "* * * the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison * * *." The interpretation of the comparative negligence act made in Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N. W. 158, which has been continuously accepted by this court, is in part: "If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery." See, also, Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

Mitchell v. Missouri P. R. R. Corp., 114 Neb. 72, 206 N. W. 12, states: "The trial court attempted to cover this subject in the giving of instructions * * *. In these instructions however the element referred to in the following language: 'Or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, the contributory negligence of plaintiff,

however slight, will defeat a recovery' is wholly omitted. In instruction * * * requested by defendant in the court below and refused this element was substantially covered. The failure of the court to embody in his instructions the element above quoted thus constitutes error. In view of the fact that the controlling issues in this case are certainly the matter of negligence and contributory negligence, the error is deemed prejudicial and necessitates the reversal of the case."

Gibson v. Kelkenny, 112 Neb. 524, 199 N. W. 838, states: "The instructions quoted are erroneous for the reason they do not permit the barring of a recovery by plaintiff on account of contributory negligence, if any, unless it was gross in comparison with that of the defendant. It is when the contributory negligence of plaintiff is slight that a recovery by him is not barred. * * * It is clear from the instructions that plaintiff was permitted to recover damages on conditions not sanctioned by law and on terms not accorded to other litigants similarly situated. There does not seem to be any substantial ground for holding that the error was not prejudicial to defendant."

In McMullen v. Nash Sales Co., 112 Neb. 371, 199 N. W. 721, an instruction to the jury was that if it found the plaintiff's failure to exercise due care was not the sole cause of the accident but only contributed thereto in a less degree than that of the truckdriver (who was employed by Nash Sales Co.), then that fact would not defeat a recovery on the part of plaintiff if the jury further found that the truckdriver was "guilty of gross negligence as compared with the negligence of the plaintiff, if any * * *." The court said: "The effect of this instruction was to permit a recovery for damages if the truck-driver was guilty of gross negligence as compared with the negligence of McMullen, if any. The comparison authorized by the instruction is between 'gross negligence' of Jones and 'negligence' of McMullen, while the latter's conduct, according to the statu-

tory rule, must be tested for the purpose of his recovery by the degree of 'slight negligence.' * * * For the purpose of determining liability for damages, where both parties are guilty of negligence in some degree, 'slight negligence' is not the same as 'negligence.' Under the instruction in controversy, when considered with the evidence and the statute, the term 'negligence of the plaintiff' may have included 'gross negligence' in the minds of the jury. The instruction was clearly erroneous and permitted a recovery not authorized by law. Owing to the divergent views of the witnesses as to the facts in controversy, there does not seem to be any substantial ground for holding that the error was not prejudicial to the Nash Sales Company."

The omission of the element: "or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery" from the instruction in McMullen v. Nash Sales Co., *supra*, would not seem to be any more fatal than the omission of the element: "deceased's negligence was more than slight or" from the instruction in this case. The omission discussed above was an error and was prejudicial to appellants.

The correctness of the instruction which advised the jury that before appellants could have the benefit of the defense of contributory negligence of deceased they must have proved by the weight of the evidence that the contributory negligence of deceased was more than slight when compared with the negligence, if any, of appellants, is challenged by them. The comparative negligence act says contributory negligence of plaintiff shall not bar recovery when it is slight and the negligence of defendant is gross in comparison, but the contributory negligence of plaintiff shall be considered by the jury in mitigation of damages. § 25-1151, R. R. S. 1943. This statute was interpreted in Morrison v. Scotts Bluff County, *supra*, in this manner: "The true rule

is that, if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery." That interpretation has been frequently and was recently repeated and applied. Murray v. Pearson Appliance Store, *supra;* Brackman v. Brackman, *supra.*

Roby v. Auker, 151 Neb. 421, 37 N. W. 2d 799, states: "Under the comparative negligence law * * * the words 'slight' and 'gross' as therein used are comparative terms and the intent of the statute is that the negligence of the parties will be compared one with the other in determining questions of slight and gross negligence." The opinion in that case quotes the interpretation of the statute made in Morrison v. Scotts Bluff County, *supra,* and concluded: "It will be noted that the foregoing rule is predicated on a comparison of the negligence of the parties in determining the liability of both the plaintiff and the defendant, that is, the question of slight or gross negligence as used in the statute are both dependent upon a comparison of the negligence of the parties, one with the other." This announcement therein is definite that all questions of slight or gross negligence in cases in which the comparative negligence act is applicable are to be determined not by satisfying a rule of burden of proof but by comparison made by the jury, or in its absence by the court, of the negligence of the parties, one with the other. Brackman v. Brackman, *supra,* made the most recent consideration of this subject and therein the language last quoted is approved.

Bezdek v. Patrick, *supra,* declares: "The words 'slight' and 'gross' as employed in the comparative negligence act of this state are comparative terms. The test the statute provides is not based upon absolute degree of negligence but rather upon a comparative test of the relative degrees of negligence between the parties. The negligence of the plaintiff or defendant is not to be evaluated as slight, gross, or otherwise, standing alone. The criterion by which the degree of negligence of plaintiff is to be measured is the extent thereof by comparison with the negligence of defendant."

These decisions demonstrate that if a plaintiff produced evidence which, if believed, shows negligence of the defendant as alleged by the plaintiff and defendant has made proof sufficient to support a finding of negligence of plaintiff in the respect claimed by defendant, there is not thereafter any matter of burden of proof in the case but the question of whether the negligence of plaintiff is slight or more than slight or whether the negligence of defendant is gross or less than gross is determined by a comparison by the court or jury of the negligence of the parties under the circumstances, one with the other. The criterion by which the degree of negligence, slight or more than slight, of the plaintiff is to be decided is the extent thereof by comparison with the negligence, gross or less than gross, of the defendant. Likewise the degree of negligence of defendant is to be determined by comparison of his negligence with the negligence of the plaintiff. This is the meaning and effect of Murray v. Pearson Appliance Store, *supra:* "After the parties establish and the jury, under proper instructions, finds the respective parties guilty of actionable negligence and contributory negligence the responsibility is then on the jury to make the comparison as contemplated by the statute. This comparison is to determine the rights of the parties to recover, if at all, and the extent thereof. In this respect there is no burden of proof on either party but solely a duty on the part

of the jury to make the proper comparisons on the evidence before them. The court should give the jury an instruction in which the correct basis for making the comparison is set forth."

The instruction upon this subject given in this case invaded the province of the jury to make the comparison the statute required to ascertain whether the negligence of deceased was slight or more than slight. It placed a burden upon appellants greater than the law imposed and permitted a recovery not authorized by law. The instruction was erroneous and prejudicial.

The judgment should be and it is reversed and the cause is remanded to the district court for Hall County for further proceedings according to law.

REVERSED AND REMANDED.