CONSTANCE JOANNE RIPP, ADMINISTRATRIX OF THE ESTATE OF RICHARD F. RIPP, DECEASED, APPELLANT, V. CHARLES RIESLAND ET AL., APPELLEES.

141 N. W. 2d 840

Filed April 22, 1966. No. 36101.

John A. Wagoner and Baylor, Evnen, Baylor & Urbom, for appellant.

Luebs, Tracy & Huebner, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

The appellant Constance Joanne Ripp, as adminstratrix of the estate of Richard F. Ripp, deceased, brought this action as plaintiff to recover for the alleged wrongful death of her husband in a collision between a 1950 Ford driven by the decedent Richard F. Ripp and a 1954 Ford operated by the defendant and appellee Charles Riesland, whose negligence, if any, is imputed by law to the other defendant Elmer Riesland. Where defendant is mentioned in the singular, it will refer to the driver, Charles Riesland.

The jury returned a verdict for the defendants and from an order refusing to grant a new trial the plaintiff has appealed to this court.

This is the third appearance of this case before this court. In Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246, a judgment on a verdict for the plaintiff was reversed and a new trial ordered. In Ripp v. Riesland, 176 Neb. 233, 125 N. W. 2d 699, a judgment on a verdict for the defendants was likewise reversed and a new trial ordered.

The facts are fully outlined in our first opinion, Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246, and will not be set forth here except as this decision requires a further statement.

The plaintiff assigns error to the trial court in receiving in evidence the opinion of defendants' expert witness, a professor emeritus of professional engineering at the University of Nebraska, at times herein called the

professor, relating to the minimum stopping distance of the decedent's 1950 Ford upon the road immediately east of the intersection which was the scene of the accident upon which the decedent's car was approaching westward.

The qualifications of the expert witness are not questioned in the plaintiff's brief. The witness first was asked and answered the following question: "Q. I will ask you again, if at a time when the road conditions were the same as you observed them on the day you were out at the scene of the accident, the 1950 Ford automobile was approaching the intersection where the accident involved in this case happened from the east on the east-west road at a speed of 50 miles an hour and the brakes were applied so as to cause all wheels to skid, do you have an opinion as to the minimum distance the automobile would travel from the point that the wheels began to skid until it came to a stop? A. Yes." He was then asked what that opinion was and, over objection of the plaintiff that the same was irrelevant and immaterial, that there was no sufficient foundation therefor, and that it assumed facts not in evidence, he answered 180 feet.

We will first discuss the objection as it relates to relevancy and materiality. The evidence shows the deceased was approaching the intersection, where the fatal accident occurred, from the east. The defendant was going north on the road that extends to the intersection from the south. The east side of the road, south of the intersection, was so lined with trees, brush, and weeds as to entirely shut off the vision of a driver going north thereon except in three short spaces, and the vision to the left of the decedent as he approached the intersection was little better. The decedent's car, therefore, was on the right. Plaintiff argues this stopping distance could not have been material and relevant in the case, and that the distance in which skid marks would be laid down by the decedent's vehicle was not involved and

had nothing to do with the issues since there is no evidence of skid marks or of an attempt to stop.

The speed of the decedent's car was estimated at 50 miles per hour by the only eyewitness, who said she saw it approaching the intersection, as she says, when it was a block or a block and a half therefrom, and that the accident occurred but 2 or 3 seconds thereafter. There is evidence from an engineer which, if given credence, shows that the point referred to by this witness was 371 feet east of the center of the intersection. The eyewitness also saw the car of the defendant at a point shown to be 117 feet south of this intersection and its speed was then estimated by her at 50 miles per hour. There is a conflict in the evidence as to whether it proceeded at that rate to the point of impact of the two cars at about the middle of the intersection, or whether it was slowed down to 20 miles per hour before it entered the intersection. The defendant testified it had been slowed as stated and that on passing a line of large trees at the fence line he drove into the intersection and saw the decedent's car approaching 75 feet to the east. Defendant says he previously had but a momentary vision to his right at three slight breaks in the dense obstruction of vegetation and trees.

The deceased was thoroughly familiar with the intersection, having driven over it many times from his home to the east to the farm of his father on the west, a portion of which he operated. The answer of the defendants, aside from allegations that the decedent failed to see the defendant's 1954 Ford, alleged the deceased failed to have his car under reasonable control and alleged he was driving at an excessive speed considering the condition of the road. These questions were therefore in issue. The expert had testified that the reaction time of the driver upon seeing danger ahead was $\frac{3}{4}$ of a second and in that interval a vehicle driven at 50 miles per hour would travel 56 feet from the time the driver's mind was alerted until the brakes actually could take

hold. We think the stopping distance of decedent's vehicle had some relevancy and materiality in that it tended to show that the speed of the decedent's vehicle in approaching the intersection might be more than reasonable considering that the intersection he was approaching was either a blind one, or almost so. It also had some relevancy and materiality to show what the defendant could or should have done in approaching the intersection. In Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246, this court quoted from Spaulding v. Howard, 148 Neb. 496, 27 N. W. 2d 832, saying: " 'It is a question of fact as to the negligence of the parties as to what they did or did not see, or what they should or could have seen.' See, also, Bell v. Crook, *supra* (168 Neb. 685, 97 N. W. 2d 352, 74 A. L. R. 2d 223)." We think in the present case there was not only a question of fact as to the negligence of the parties with respect to what they saw or could have seen, but also of what they did which contributed to the accident or what they could have done to prevent it.

In 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 934, p. 482, the text states: "In an action growing out of a motor vehicle accident, any evidence of the conditions and circumstances leading up to and surrounding the accident which will throw light upon the conduct of the parties and the care, or lack of care, exercised by them, is, as a general proposition, admissible." Further, the same text says: "It has been held quite generally that opinion evidence as to the distance within which a motor vehicle can be stopped is competent and admissible, where such evidence is material and relevant to the issues and is given by a witness qualified to give such an opinion." 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 987, p. 539. The cases with respect to "Opinion evidence as to distance within which automobile can be stopped," are assembled in the annotation beginning at 135 A. L. R. 1404. It is stated there that it has been quite generally held that opinion evidence

as to the distance within which an automobile may be stopped is competent and admissible. The case of Blado v. Draper, 89 Neb. 787, 132 N. W. 410, is there cited in which this court followed the general rule. We think the evidence was relevant and material.

The plaintiff further contends that there was no sufficient foundation for the expert's opinion and that the opinion assumed facts not in evidence. The professor testified that in determining stopping distance, the basic factor taken into account is known as the friction factor of tires with the road. He termed this the "coefficient of friction." He attempted to explain what that coefficient of friction was, but over objection of plaintiff he was not allowed to answer. He testified further that he went out upon that road more than a year thereafter. He took with him another witness who had been the first to arrive at the scene of the accident. This witness farmed land bordering the road in question. This same witness was called previous to the professor and had testified the road was in the same condition when he and the professor were upon it as it was at the time of the accident. The professor testified he had made tests for more than 30 years to determine the ordinary distance a motor vehicle would stop on a certain type of road. He had conducted experiments on the same type of road with an automobile of the same type involved in this particular case. He stated he knew the coefficient of friction involved. He explained the grade of the road is insignificant unless it was steep. If skid marks are laid down the quality of the brakes need not be considered. Also, the temperature has nothing to do with the results of the test, and the tread of the tires makes no difference except a slight advantage might occur when performed with bald tires, which might vary from .83 for smooth tread tires to .72 for ribbed. He stated he used average tires, which may be assumed to be the mean, or .775. He stated the difference in air pres-

sure in the tires and the weight of the car make no significant difference.

Plaintiff contends that without the coefficient of friction being explained to the jury, there was no sufficient foundation supplied. The professor, however, testified he, himself, knew the coefficient of friction involved. His testimony in the end plainly appears to relate to the tests made by him. We think the question was allowed to be answered on the basis of the tests and it was sufficient that the expert understood the underlying principles. The plaintiff points out that the professor said that bent or distorted wheels would make a difference and if they were skidding sideways there would be a difference. No such condition was shown, however.

An annotation appears with respect to the "Admissibility of experimental evidence, skidding tests, or the like, relating to speed or control of motor vehicle," at 78 A. L. R. 2d 218. Stopping tests are set out at page 225 and tests with respect to skid marks at page 228 of the annotation. It is quite apparent in reviewing the cases cited that generally the exactly similar conditions are not required if they are approximately the same. No tests could be exactly similar. Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627, was a case where, over objection of the defendants, the trial court permitted witnesses to give the results of the experiments and photographs of skid marks produced on the pavement as a result of the experiments conducted more than 2½ years later. In reviewing the cited case on appeal, this court stated: "This court recognizing the difficulties attending an offer of evidence of illustrative experiments has adopted the rule that in such cases a discretion is conferred upon the trial court and that unless there is a clear abuse of discretion a judgment will not be reversed on account of the admission or rejection of such evidence." Other cases adhering to that principle were there cited, including City of Ord v. Nash, 50 Neb. 335, 69 N. W. 964; Davis v. State, 51

Neb. 301, 70 N. W. 984; Lillie v. State, 72 Neb. 228, 100 N. W. 316; Falkinburg v. Prudential Ins. Co., 132 Neb. 831, 273 N. W. 478. Following the decision of this court in Crecelius v. Gamble-Skogmo, Inc., *supra,* in the present case we cannot say the trial court abused its discretion in admitting the results of the professor's experiments. The error assigned by the plaintiff to the admission of the opinion of the expert cannot be sustained.

Plaintiff contends that the trial court erred in failing to instruct the jury to disregard certain testimony of the defendant as a matter of law. It is argued that defendant, in the different trials heretofore had in this case, had given contradictory versions of certain events in controversy, that the changes in his testimony occurred because of the necessities of the particular occasion, and that his testimony should be discredited as a matter of law. Certain differences in defendant's testimony in the several hearings are pointed out by the plaintiff in her brief. The brief of the defendants, on the other hand, points out that the variances were slight in some instances and in others, when the record is considered, there was really no variance at all. It is, however, unnecessary for us to resolve this factual dispute. No objection was made to the testimony of the defendant in this respect, nor was any motion made to strike any such evidence. "When testimony is offered and admitted in evidence without objection being made thereto, error cannot be predicated thereon on appeal. This rule applies to the district court when reviewing its own proceedings on motion for a new trial." Law v. Gilmore, 171 Neb. 112, 105 N. W. 2d 595.

The plaintiff maintains that the trial court erred in giving its instruction No. 9 which instructed the jury that the failure of a driver of a vehicle to see a car in a favored position was evidence of negligence. She contends that the jury should have been instructed in the present case that one who fails to see a car in a favored position is guilty of negligence as a matter of law. This

contention was heretofore made in the plaintiff's brief in the second appeal of this case before this court in Ripp v. Riesland, 176 Neb. 233, 125 N. W. 2d 699. The judgment of the trial court was reversed for other reasons and plaintiff's claim of error was not discussed. It was considered to have been one of those "other errors, assigned," having no merit. This was because this issue was one of those passed upon in the first appeal, Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246. The substance of the instructions to the jury given at the first trial with respect to control and lookout were there stated as follows: "The substance of a part of the charge to the jury was that it was the duty of a motorist to have his vehicle under reasonable control so as to enable him to avoid colliding with other vehicles if the drivers thereof were exercising due care. It was the duty of a motorist to keep a reasonably careful lookout so that he might be able to avoid a collision with other vehicles lawfully upon the highway. It was for the jury to find from the evidence whether these duties were violated by the deceased (Ripp) or appellant (Riesland); and if the jury found that there was such a violation, it would not in and of itself constitute negligence but would be a circumstance which the jury could take into consideration in deciding whether the deceased or appellant was guilty of negligence." The instructions were there attacked by the defendant who contended the evidence showed he had entered the intersection first, but as given by the trial court it applied to both drivers of the vehicles involved. These instructions were approved by this court and in the discussion it was stated: "It is also true, as the instruction of the trial court stated, that the violation of a safety regulation established by statute or ordinance is not generally negligence as a matter of law but such a violation is a fact which may be considered in connection with all the other evidence in the case in deciding the issue of negligence. Armer v. Omaha & C. B. St. Ry. Co., 151

Neb. 431, 37 N. W. 2d 607. The complaint of appellants (Rieslands) under the circumstances of this case is without foundation." With respect to the evidence, the court then further stated: "The evidence is such that a finding that either the deceased or appellant had the right-of-way at the intersection would have been sustained. It was an important question and one for jury determination." There are some differences in the evidence disclosed in the present record and that detailed in our first opinion; but that presently before us would still amply justify a finding either that the deceased or the defendant had the right-of-way at the intersection. It is obvious that this court in our previous discussion determined that the question of which driver had the right-of-way at the intersection was a question of fact to be determined by the jury, and likewise the failure of the driver to see the favored vehicle, whichever the jury determined it to be, was evidence of negligence under the circumstances rather than negligence as a matter of law. "All matters decided expressly or by necessary implication in an opinion reversing a judgment become the law of the case in any future trial." Bohmont v. Moore, 141 Neb. 91, 2 N. W. 2d 599. The plaintiff's contention has no merit.

The plaintiff asserts the judgment is not supported by the evidence and is contrary to law. It is obvious that this contention is advanced in conjunction with the claim of the plaintiff that the trial court should have excluded the evidence of the defendant and instructed the jury to disregard it. This has already been discussed herein. It is urged that without his testimony there was insufficient evidence by way of defense to support the verdict. No other argument is advanced and the record before us is in substance so similar to that detailed in the first appeal, Ripp v. Riesland; 170 Neb. 631, 104 N. W. 2d 246, as to obviate a further résumé thereof. There is no foundation for the complaint.

Further errors are assigned which are not discussed

and there appears a discussion of an alleged error that is not assigned. None of these are plain errors affecting the result. Where errors are assigned but are not discussed in the appellant's brief and another is discussed which is not assigned, none of which are plain errors, they will not be considered by this court on appeal. Ritter v. Drainage District No. 1, 148 Neb. 873, 29 N. W. 2d 782.

Failing to find error in the judgment of the trial court, the same is affirmed.

AFFIRMED.

WHITE, C. J., not participating.