Roy J. Shover et al., appellants, v. General Motors Corporation, a corporation, appellee.

253 N. W. 2d 299

Filed May 11, 1977.  No. 40948.

Alfred A. Fiedler, for appellants.

David A. Svoboda of Kennedy, Holland, DeLacy & Svoboda, and Frazer F. Hilder, for appellee.

Heard before White, C. J., Spencer, Boslaugh, McCown, Brodkey, and White, JJ., and Kuns, Retired District Judge.

Boslaugh, J.

The plaintiffs, Roy J. Shover, his wife Betty, his

daughter Sheryl, and his son Michael, were injured in an automobile accident on the Ohio Turnpike in Sandusky County, Ohio, on August 15, 1969. The plaintiffs had left Lowell, Massachusetts, on the evening of August 14 to return to Omaha. Roy drove through the night and until about 7 a.m., when they stopped near Cleveland for breakfast.

Betty commenced driving when they left the breakfast stop near Cleveland and was driving when the accident occurred. Sheryl Shover was riding in the front seat with her mother. Roy was riding in the rear seat. Michael Shover was riding in the cargo area of the station wagon behind the rear seat.

The accident occurred when the right front corner of the station wagon struck a guardrail on the right side of the highway. The station wagon continued along the guardrail until the right front struck the pier or abutment of an overpass. The rear of the station wagon then swung around to the west and the station wagon skidded across the highway and into the median where it overturned. The driver and all the passengers were injured. Roy sustained very severe injuries in the accident.

Separate actions were commenced by the plaintiffs to recover the damages resulting from the accident. The actions were consolidated for trial in the District Court and were briefed and argued together in this court.

The plaintiffs alleged that the accident was caused by a defective tie rod adjusting sleeve on the station wagon which fractured and caused the accident. The cases were submitted to the jury on the theory of strict liability. The jury returned verdicts for the defendant and the plaintiffs have appealed. The assignments of error relate to rulings of the trial court on objections to expert testimony offered by the defendant.

The automobile involved in the accident was a 1969 Buick Special station wagon purchased new from a

dealer in Glenwood, Iowa. The automobile operated satisfactorily except for a noise described as a "clunk" when the brakes were applied. The automobile was returned to the dealer for service but continued to make a "clunk" noise when the brakes were applied. The automobile had traveled about 2,500 miles at the time of the accident.

At the time of the accident Roy, Sheryl, and Michael were asleep. Betty, the driver, testified that she was wide awake when the accident happened. She said she had slept for 2 to 6 hours during the night while Roy was driving, and had several cups of coffee for breakfast. She had been driving for about 35 or 40 minutes and had passed some other traffic when "all of a sudden the car was over on the guardrail." She was traveling about 65 miles per hour, and was proceeding straight ahead in the outside lane when "all of a sudden we was over on the guardrail."

There were two eyewitnesses to the accident. Carl J. Kelly was driving a truck in an eastbound lane approaching the overpass when he saw the Shover station wagon come off the guardrail, skid across the westbound lanes, and turn over in the median.

Dominic Cicoretti was driving a truck in the outside westbound lane when the Shover station wagon passed to the left. After passing his truck the station wagon turned back into the right or outside lane but failed to straighten out. Cicoretti testified that the station wagon continued on a gradual curve from the left-hand lane across the berm or shoulder and into the guardrail. Cicoretti said the station wagon appeared to be operating in a normal manner and he did not see the brake lights come on at any time.

After the accident it was found that the right adjusting sleeve on the tie rod was broken. The adjusting sleeve connects the tie rod end to the center

portion of the tie rod which is a part of the steering gear. The tie rod assembly is connected to the front wheels and holds the wheels in a parallel alignment. The adjusting sleeve is threaded so that the length of the tie rod can be adjusted in aligning the front wheels. Clamps at each end of the sleeve fasten the sleeve to the tie rod and tie rod end so that the alignment will be maintained after the adjustment has been made.

The plaintiffs called an expert witness, Henry H. Durr, who testified that in his opinion the accident was caused by fatigue failure of the right tie rod adjusting sleeve. He further testified that the adjusting sleeve was defective and fractured causing the accident.

The defendant called several expert witnesses who testified that in their opinion the adjusting sleeve was broken in the impact, that a broken sleeve would not cause the automobile to go out of control and strike the guardrail, and that the most probable cause of the accident was the driver falling asleep.

Roger D. Olleman, a mechanical engineer and metallurgist, testified that the appearance of the sleeve after the accident indicated that it was broken by a large impact and did not fracture as a result of fatigue.

Norman B. Zauel, a staff analysis engineer employed by the defendant, testified that it was his opinion the sleeve failed as a result of impact damage and not fatigue damage. He further testified that a sudden fracture of the sleeve would not cause the vehicle to suddenly veer to the right. He had conducted an experiment at the defendant's test track using a 1969 Buick Special station wagon from which the right-hand tie rod assembly had been removed. In the experiment the witness demonstrated that a vehicle may be operated at 65 miles per hour with the right tie rod end removed and all steering accomplished with only the left front wheel

connected to the tie rod. The witness changed lanes several times with no difficulty. The experiment had been photographed and, over the objection of the plaintiffs, the defendant was allowed to show a moving picture of the experiment to the jury. A motion to strike this evidence made at the close of the testimony by this witness was overruled.

Section 27-702, R. R. S. 1943, now provides that an expert may testify by opinion "or otherwise." This includes the use of demonstrative evidence, the conducting of experiments, and the exposition of principles relevant to the issues.

The general rule is that evidence relating to an illustrative experiment is admissible if a competent person conducted the experiment; an apparatus of suitable kind and condition was utilized; and the experiment was conducted fairly and honestly. Hawkins Constr. Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N. W. 2d 643; Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627.

The trial court has a wide discretion in determining whether evidence relating to illustrative experiments should be received. Hawkins Constr. Co. v. Matthews, Co., Inc., *supra;* Ripp v. Riesland, 180 Neb. 205, 141 N. W. 2d 840. A judgment will not be reversed on account of the admission or rejection of such testimony unless there has been a clear abuse of discretion.

The plaintiffs objected to the evidence concerning the experiment on the ground the foundation was inadequate. Specifically, the plaintiffs claimed the circumstances were not similar because the entire tie rod had been removed, the witness driver knew the tie rod had been removed, it was not shown the vehicle used in the experiment had traveled only 2,500 miles, the test vehicle had only the driver and no cargo in it, the test was not made on the turnpike, and it required engineering knowledge to operate the test vehicle. None of these matters appear to

have been material so far as the validity of the experiment is concerned. The surface of the test track appeared to be similar to that of a turnpike, the witness used no special skills in driving the automobile, and no special weights of any kind were placed in the automobile. It is not essential that conditions existing at the time of the experiment be identical with those existing at the time of the occurrence. Substantial similarity is sufficient. Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597; Ripp v. Riesland, *supra*. It was within the discretion of the trial court to receive the evidence relating to the experiment and the assignment of error is without merit.

The defendant also called J. Stannard Baker, a traffic engineer and consultant in the field of traffic accidents, who was allowed to testify, over objection, concerning his opinion as to the cause of the accident. Baker stated it was his opinion, based upon the evidence as to the movement of the station wagon before it struck the guardrail, that the station wagon struck the guardrail because the driver fell asleep.

The plaintiffs contend this evidence should not have been received because it was an opinion as to the ultimate fact at issue and the evidence invaded the province of the jury.

The ultimate fact at issue in this case was the cause of the station wagon turning into the guardrail. There was no way this issue could be resolved without expert testimony. The plaintiffs' expert testified that a fatigue fracture of the adjusting sleeve caused the station wagon to turn into the guardrail. The defendant's expert witnesses testified that the sleeve fractured as a result of the impact, that a fractured sleeve by itself would not cause the driver to lose control of the automobile, and that the most probable cause of the accident was the driver falling asleep.

Expert testimony as to the ultimate fact is admis-

sible if the case is one to be wholly resolved by such evidence. Petracek, v. Haas O. K. Rubber Welders, Inc., 176 Neb. 438, 126 N. W. 2d 466. Section 27-704, R. R. S. 1943, now provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The question remaining is whether the opinion of the witnesses that the driver probably fell asleep was of any assistance to the jury.

The general rule has been that opinion evidence is admissible where it is necessary and advisable as an aid to the jury. Drahota v. Wieser, 183 Neb. 66, 157 N. W. 2d 857. Section 27-702, R. R. S. 1943, now provides that expert testimony is admissible if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. The admissibility of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. Dovey v. Sheridan, 189 Neb. 133, 201 N. W. 2d 245.

The witness Baker had spent many years investigating, studying, and analyzing traffic accidents. It can not be said that his opinion would be of no assistance to the jury in assembling and analyzing the facts of the case.

Although the jury could have decided this case without having the opinion of the witness Baker as to why the station wagon turned into the guardrail, that does not mean the evidence was not of some assistance to the jury in reaching its verdict. We think it was within the discretion of the trial court to receive this evidence.

The judgment of the District Court is affirmed.

AFFIRMED.