RONALD OBERHELMAN, APPELLANT, v. LOYAL I. BLOUNT, APPELLEE.

241 N. W. 2d 355

Filed April 28, 1976. No. 40366.

Warren C. Schrempp, Richard J. Dinsmore, and Richard E. Shugrue of Schrempp, Dinsmore & McQuade, and Richard J. Spethman, for appellant.

Richard P. Jeffries of Gross, Welch, Vinardi, Kauffman & Day, and Dwight Griffiths, for appellee.

Heard before SPENCER, NEWTON, and CLINTON, JJ., and WARREN and RIST, District Judges.

WARREN, District Judge.

This is an action for damages arising out of a collision between an automobile being driven by plaintiff Ronald Oberhelman and a farm grain truck being operated by defendant Loyal I. Blount. Plaintiff suffered a knee injury involving a fracture of the lateral plateau of the left tibia, from which he claims a permanent disability.

The collision took place on October 20, 1971, on U. S. Highway Nos. 73-75 approximately 3 miles north of Plattsmouth, Nebraska. The highway in that area is a four-lane divided highway, with the eastern two lanes northbound and the western two lanes southbound. Separating the north and southbound lanes is a wide center median wherein is located a state weigh station. For northbound trucks, there is an entrance road to the south of the weigh station and north of the weigh station is an exit road back onto the two northbound lanes of highway Nos. 73-75. Approximately 1,000 to 1,500 feet

separates the entrance and the exit to the weigh station access road. At the point of exit there is a stop sign facing west controlling vehicles about to enter highway Nos. 73-75.

At 7 a.m., when it was still dark, the defendant Blount drove his truck out of the weigh station north on the exit road, turned east, and stopped 8 to 10 feet back of the stop sign. He looked to the south, saw headlights about 900 feet away, and entered the highway. He traveled northeasterly about 20 feet at not over 5 miles per hour, saw plaintiff's automobile 20 to 30 feet away, and struck the plaintiff's automobile at the left front door with the extreme right front corner of his truck. Plaintiff claims that the impact took place in the left lane and that was where "he hit me." Blount admits that he did not look again to the south after starting up from the stop sign. The plaintiff Oberhelman, as he traveled north, came over a viaduct some 2,500 to 3,000 feet from the accident scene and observed a semi-trailer truck just entering highway Nos. 73-75 from the weigh station exit, so he changed to the left lane to be prepared to pass the slow moving vehicle. He was traveling 50 to 55 miles per hour. The posted speed limit was 60 miles per hour. When Oberhelman was about 150 feet south of the weigh station exit he saw Blount pull onto the highway. He swerved to the right and applied his brakes, but the truck kept coming and the collision resulted.

Clarence Tom Frudiker, then deputy sheriff of Cass County, testified that he found the accident debris in the right lane approximately 3 feet east of the dividing line between the two lanes. When Frudiker asked Blount why he had failed to yield the right-of-way, Blount stated that he had stopped at the stop sign, observed a vehicle coming from the south, but thought he had time to get across the highway before the vehicle reached him. Oberhelman claimed medical specials of $747.93 and total loss of his automobile valued at

$925. Blount cross-petitioned for his truck damage of $179.08.

The court submitted the case on plaintiff's petition, the defense of contributory negligence, comparative negligence, and the defendant's counterclaim. The jury returned a verdict for the plaintiff on his petition and assessed damages of $4,327 against Blount, and further found for plaintiff on the defendant's counterclaim. Plaintiff filed his motion for new trial on the issue of damages only, and appeals from the order overruling the same.

Plaintiff's principal assignment of error is that the court erred in submitting and instructing on alleged contributory negligence of the plaintiff and comparative negligence, thus giving the jury the opportunity to reduce the damages awarded by use of the comparative negligence doctrine while finding for plaintiff on liability. The defendant alleged that Oberhelman was negligent in six respects: He failed to keep a proper lookout; he failed to keep his vehicle under proper control; he drove at a high and dangerous rate of speed that was not commensurate for the conditions of the roadway and the condition of the traffic at that time existing; he failed to yield to defendant his half portion of highway Nos. 73-75; he failed to yield the right-of-way to the defendant; and he failed to slow down, stop, or swerve his vehicle or take other means at hand to avoid the collision. The court instructed the jury on each of these six allegations of plaintiff's contributory negligence, verbatim.

"If the defendant pleads that the plaintiff was guilty of contributory negligence the burden is upon him to prove that defense." Giebelman v. Vap, 176 Neb. 452, 126 N. W. 2d 673 (1964).

"Where contributory negligence is pleaded as a defense, and there is no competent evidence to support it, it is prejudicial error to submit to the jury issues involving contributory and comparative negligence."

Spath v. Coon, 189 Neb. 822, 205 N. W. 2d 541 (1973). See, also, Arnold v. Lance, 166 Neb. 834, 90 N. W. 2d 814 (1958).

"Where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict therein, as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury." Gross v. Johnson, 174 Neb. 273, 117 N. W. 2d 534 (1962).

"It is reversible error for the court to include, in its instructions to the jury, allegations of fact found in the pleadings but which have not been supported by any evidence." Fuss v. Williamson, 159 Neb. 525, 68 N. W. 2d 139 (1955).

We examine the specifications of contributory negligence in the light of the foregoing rules. The first allegation was that Oberhelman failed to keep a proper lookout. Plaintiff was traveling on a favored arterial highway protected by a stop sign and he had a right to assume that other users of the highway would use the highway in a lawful manner unless or until he had warning, notice, or knowledge to the contrary. See Gross v. Johnson, *supra*. The first such warning or notice which Oberhelman had was when he was 150 feet away and Blount pulled onto the highway and into the lane in which plaintiff was traveling. Plaintiff testified that he was sure he had earlier noticed the Blount truck sitting there at the stop sign, but took no special notice of it until it pulled out in front of him. Defendant's contention that Oberhelman's observation was grevously tardy is without basis in fact. There is literally no evidence that plaintiff failed to keep a proper lookout and the jury should not have been allowed to consider that specification.

The second specification of contributory negligence concerned an alleged failure of Oberhelman to keep his

vehicle under proper control. The term as used in the standard instruction is "reasonable control," and that is the term which should have been used both by the court and counsel. (NJI No. 7.03.) Disregarding that misnomer, we find nothing in the evidence to even suggest that plaintiff ever lost control, or failed to have full, complete, and reasonable control of his automobile. He immediately applied his brakes and swerved when Blount suddenly entered the highway. This specification of negligence has no support in the evidence.

Thirdly, the jury was instructed with reference to a high and dangerous rate of speed not commensurate with the conditions of the roadway and the traffic. Again it is noted that court and counsel disregarded the plain language of the two applicable statutes then in force which prohibit speed greater than is reasonable and proper (§ 39-723, R. S. Supp., 1971), and speed greater than is reasonable and prudent (§ 39-7,108, R. R. S. 1943, Reissue of 1968), and instead coined the nebulous and misleading phrase "high and dangerous rate of speed." Building upon plaintiff's testimony that he knew the weigh station was an area of "some vehicle activity," defendant's counsel has argued extensively that plaintiff had the duty to reduce speed in coming to what he now terms an area of "high traffic density," of "known high traffic," and "high vehicular activity." The evidence was that the accident scene was an area of some vehicle activity. The same could be said of each and every vehicle accident scene. The condition of highway Nos. 73-75 at this point was normal. Plaintiff testified he was driving 50 to 55 miles per hour. Defendant did not testify as to plaintiff's speed. The traffic was normal. There was no unusual or dangerous condition, except for that created by defendant himself. Defendant's evidence did not meet the burden necessary to make a jury question on speed, and this specification should not have been submitted to the jury.

In the fourth and fifth specifications of contributory negligence, the court submitted failure to yield in two particulars: (1) Failure to yield the defendant Blount his half of highway Nos. 73-75; and (2) failure to yield the right-of-way to defendant. It should be abundantly clear in this fact circumstance that there was no defendant's half of the highway, and no right-of-way in defendant. On the contrary, defendant Blount had the positive duty to yield the right-of-way to all vehicles on the protected highway which were at such a distance and traveling at such a speed that it would be imprudent for him to enter the highway. There is simply no basis whatever for the submission of these two specifications of contributory negligence.

Lastly, the court submitted the allegation that plaintiff failed to slow down, stop, or swerve his vehicle or take other means at hand to avoid the collision. Such allegations are in the nature of general allegations of negligence, and should be cautiously given. However, it is sufficient to say that the uncontradicted evidence shows that the plaintiff did apply his brakes and swerve to the right lane in an attempt to avoid a collision the moment the danger became apparent. This was not a proper specification of contributory negligence.

Having concluded that there was insufficient evidence to sustain an affirmative finding of contributory negligence on any one of the six specifications upon which the court instructed the jury, we find that the submission of plaintiff's contributory negligence and comparative negligence was error, which was not cured by the verdict for the plaintiff because the jury was thereby allowed to compare negligence and thus reduce the damages due plaintiff. Such error is therefore prejudicial.

The finding of negligence on the part of defendant which proximately caused the collision is abundantly supported by the record.

The necessity of a new trial on the question of damages makes it unnecessary to consider plaintiff's assign-

ments of error involving the court's failure to sustain plaintiff's motion for directed verdict on the question of liability, and the inadequacy of the verdict.

Because a new trial is directed, two additional assignments of error should be discussed briefly.

Plaintiff contends that the court erred in instructing the jury that any award for future pain and suffering should be reduced to its present value. Plaintiff cites Chicago & N. W. Ry. Co. v. Candler, 283 F. 881 (Neb., 1922), as holding that damages for future pain and suffering should not be reduced to present value because: "In the matter of pain, suffering, or inconvenience, no books are kept, no inventories made, no balances struck." The position of this court has been stated in Wolfe v. Mendel, 165 Neb. 16, 84 N. W. 2d 109 (1957), as follows: "We think it just as essential that the value of future pain and suffering be reduced to its present worth as it is that the value of loss or impairment of future earnings be reduced to its present worth." That position has been restated by our approval of the pattern jury instructions (NJI No. 4.13) which were properly given by the trial court in this instance. Juries in Nebraska have been "striking a balance" on future pain and suffering by reducing it to its present worth for many years. We see no reason to depart from that rule. This assignment of error is without merit.

The trial court allowed to be read in evidence on the issue of future damages the life expectancy tables for plaintiff's age (29) from three separate sources: Actuaries - 35.15 years; American - 36.03 years; and 1958 Commissioner's - 42.16 years. Plaintiff assigns as error the use of any except the 1958 Commissioner's Table. The court properly instructed the jury that life expectancy tables are not conclusive, but may be considered in connection with other evidence bearing on the probable life expectancy of the plaintiff, such as health, habits, occupation, and other activities. (NJI No. 4.12.) We see no prejudicial error in giving the jury all three

tables since that constituted giving the jury all available information on the subject. So long as the Revisor of Statutes sees fit to include all three tables in the Appendix to Volume 2A of Reissue Revised Statutes of Nebraska, 1943, we see no error in giving the jury that information.

The judgment of the District Court is reversed and the cause remanded with instructions to enter judgment for the plaintiff on the issue of liability and grant a new trial on the issue of damages.

REVERSED AND REMANDED WITH DIRECTIONS.