FRED W. MUSTION, APPELLEE, v. REX EALY, DOING BUSINESS AS EALY SPRAYING SERVICE, APPELLANT.

266 N. W. 2d 730

Filed June 7, 1978. No. 41538.

140

Maupin, Dent, Kay, Satterfield, Girard & Scritsmier, for appellant.

Eldridge Michael Freeman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Plaintiff, Fred W. Mustion, commenced this action against Rex Ealy to recover a money judgment for damages allegedly caused by the defendant's negligent spraying of a poisonous chemical on plaintiff's land. The defendant denied the allegations of the petition, and the case proceeded to trial in the county court of Red Willow County. Defendant's motions for a directed verdict were overruled by the trial court, which found in favor of the plaintiff and awarded him a money judgment of $3,100. Defendant appealed to the District Court, which also found in favor of the plaintiff and affirmed the judgment of the county court. Defendant has now appealed to this court, contending that the lower courts erred in (1) overruling his motion for a directed verdict; (2) finding in favor of the plaintiff when the evidence was not sufficient to sustain the judgment; (3) admitting into evidence testimony concerning an experiment and allowing improper rebuttal testimony; and (4) computing damages. We affirm the judgment of the District Court.

Plaintiff is a farmer who resides near McCook, Nebraska, where defendant operates an airplane crop-spraying service. On the morning of May 15, 1975, plaintiff and his son observed a spray plane fly-

ing over their pasture, where they kept 24 cows and 24 calves and maintained water tanks. On that date, the defendant was spraying the crops of plaintiff's neighbor. Two days later, all plaintiff's cows, and one calf, became severely ill.

A veterinarian who was called to treat the animals first diagnosed the sickness as grass tetanoi, although some of the symptoms he observed in the cows were abnormal for that sickness. Treatment for grass tetanoi was ineffective. Six of the cows died, and two of them became disabled and refused to claim their calves. Plaintiff was required to purchase substitute milk for the calves, as well as additional feeds and grains for the sick animals.

After the sickness in the animals occurred, the plaintiff examined the two water tanks in the cow pasture, and smelled the distinctive odor of Thimet, a chemical compound used for rootworm control, with which the plaintiff was familiar. Plaintiff also observed a film on the surface of the water which appeared to be a diesel mixture, sometimes used in crop spraying because it drifts down well and does not evaporate. Plaintiff's observations led him to the conclusion that his cows may be suffering from Thimet poisoning.

Samples were taken from the water tanks, the alfalfa in the adjacent field of plaintiff's neighbor, and from the soil in the neighbor's cornfield. An autopsy was performed by a veterinarian on one of the deceased cows. Tests showed that both the soil and alfalfa samples contained traces of Thimet. A concentration of three parts per million of Thimet was found in one of the water tanks, and .5 parts per million of Thimet was found in the rumen contents of the deceased cow. Although the amount of Thimet found in the rumen contents at the time of the autopsy was not sufficient to cause poisoning, there was testimony that Thimet deteriorates rapidly in toxicity and that the amount of Thimet previously in-

gested by the cow before the tests may have been sufficient to be toxic.

The veterinarian testified that in his opinion the deaths and sickness of the cows were caused by Thimet poisoning. He based this opinion on his observations of the cows' symptoms, their rapid recovery when removed from the water tanks and pasture, and the presence of Thimet in the water tanks and the rumen contents. He testified that if the cows were exposed to water containing six parts per million of Thimet, normal consumption of ten gallons per day for two days would produce the effects of poisoning in the cows. The veterinarian was of the view that the water had six parts per million of Thimet in it on May 15, 1975, since it contained three parts per million a week later, and the "half-life" of Thimet in normal drinking water with a pH of 7 at 68 degrees Fahrenheit would be approximately 7 days.

Although the defendant admitted spraying the crops of plaintiff's neighbor on May 15, 1975, he denied spraying with Thimet. Defendant and the pilot of the plane testified that Aatrex Atrazine, a nontoxic chemical used for weed control, was used to spray, and that Thimet was never used. There is evidence in the record that it is illegal to apply Thimet from spray planes in Nebraska. Defendant stated that he had once possessed two bags of Thimet, that he had used one for experimental purposes before the relevant time period in question, and that he had destroyed the remaining bag when he learned that he had been accused of spraying Thimet. Evidence was presented concerning the safeguards employed to avoid spraying on areas other than the target areas, and the pilot testified that he "could not recall" flying over plaintiff's pasture. The plaintiff's neighbor testified that he had never applied Thimet to his land.

An expert witness, testifying on behalf of the defendant, disagreed with the veterinarian's conclu-

sion that plaintiff's cows had suffered from Thimet poisoning. He was of the opinion that there was not enough scientific data available to make an accurate diagnosis of toxic poisoning, and he also questioned the veterinarian's view that the water tanks probably contained 6 parts per million of Thimet on May 15, 1975. The expert acknowledged, however, that some of the symptoms displayed by the cows, such as diarrhea, were not usual symptoms of grass poisoning.

Finally, plaintiff produced evidence of the value of the cows that had died, the loss in value of the disabled cows, the increased feed expenses due to the sickness, and the cost of hiring the veterinarian to treat the cows.

There can be no question that a person operating an airplane for spraying crops must use due care to perform such operations under such conditions and in such manner as not to cause injury to others. A person who negligently sprays a liquid or powder containing a dangerous proportion of poison in such a manner as to endanger the animals of another person in the immediate vicinity may be held liable for damage resulting therefrom. See, Annotation, Liability for Injury Caused by Spraying or Dusting of Crops, 37 A. L. R. 3d 833; 8 Am. Jur. 2d, Aviation, § 101, p. 730; Rose v. Buffalo Air Service, 170 Neb. 806, 104 N. W. 2d 431 (1960).

The first question presented in this case is whether the evidence was sufficient to permit a finding that the defendant negligently sprayed Thimet on plaintiff's land. We note at the outset the rules applicable to our review of questions concerning the sufficiency of the evidence. In a law action tried to the court without a jury, the findings of the court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. Dial Realty, Inc. v. Cudahy Co., 198 Neb. 641, 254 N. W. 2d 421 (1977). In testing the sufficiency of the evidence to

support a verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor, and he should have the benefit of every inference that can reasonably be drawn therefrom. C I T Financial Services of Kansas v. Egging Co., 198 Neb. 514, 253 N. W. 2d 840 (1977). It is also the rule that it is not the province of this court to weigh and resolve conflicts in the evidence or weigh the credibility of witnesses; those functions are for the trier of fact. Merten v. Pedersen, 199 Neb. 34, 255 N. W. 2d 869 (1977). Finally, it is the duty of the court to decide a question as a matter of law and direct a verdict only where the facts adduced to sustain an issue are such that but one conclusion can be drawn therefrom when related to the applicable law. See Branch v. Wilkinson, 198 Neb. 649, 256 N. W. 2d 307 (1977).

Defendant contends that the evidence was insufficient to show that he had sprayed Thimet on plaintiff's land and therefore a verdict should have been directed in his favor. Defendant and his pilot unequivocally denied spraying Thimet on the day in question, and plaintiff's neighbor stated that he had never used Thimet on his land. Nevertheless, the uncontroverted evidence is that Thimet was found in plaintiff's water tanks, and in the soil and alfalfa samples taken from the adjacent fields of plaintiff's neighbor. The Thimet was found in these places shortly after the defendant sprayed the neighbor's crops and shortly after the spray plane was seen over plaintiff's pasture. As noted by the District Court, it is pertinent that Thimet was discovered in both the water tanks and in the alfalfa and soil samples. This fact indicates that the Thimet most likely came from an aircraft, for if it had washed on the land from another farm, it would not be in the water tank, and if it had somehow gotten into the water, it would not be on the land.

Although the proof of defendant's negligently

spraying Thimet on plaintiff's land was circumstantial, such evidence may properly be used to establish a cause of action. A party who relies on circumstantial evidence for proof of causation need not exclude any other possible causes, although the evidence must be sufficient to fairly and reasonably justify the conclusion that a cause of action has been proved. Conjecture, speculation, or choice of quantitative possibilities are, of course, not proof. There must be something more which would lead a reasoning mind to one conclusion rather than to the other. See, Pendleton Woolen Mills v. Vending Associates, Inc., 195 Neb. 46, 237 N. W. 2d 99 (1975); Wilgro, Inc. v. Vowers & Burback, 190 Neb. 369, 208 N. W. 2d 698 (1973); J. R. Watkins Co. v. Wiley, 184 Neb. 144, 165 N. W. 2d 585 (1969).

In the present case we cannot say that the finding of the District Court was clearly wrong. The evidence presented, although circumstantial, was sufficient to fairly and reasonably justify the conclusion that the defendant had sprayed Thimet on plaintiff's land. Therefore, the defendant, contrary to his contention, was not entitled to a directed verdict on the ground that the plaintiff had failed to prove that he had sprayed Thimet, and the court was correct in overruling his motion therefor.

Defendant also contends that the evidence was insufficient to permit a finding that the cows suffered from Thimet poisoning. He relies heavily on the conclusions of his expert witness previously referred to, and argues that the opinion testimony of the veterinarian was based on speculation and conjecture.

Under the principles concerning the issue of sufficiency of evidence discussed above, we believe this contention is without merit. The veterinarian's opinion that the cows suffered from Thimet poisoning was based on his observation of the cows, his treatment of them, the presence of Thimet in the water tanks and the rumen contents of the deceased

cow, his understanding of the concentration of Thimet which would be toxic, and his calculation that the cows were exposed to a toxic dose of Thimet. The fact that defendant's expert witness was of a different opinion is not decisive. This court will not set aside a verdict where there is conflicting evidence unless the verdict is clearly wrong. Merten v. Pedersen, *supra*. In the present case we believe that the evidence was sufficient to fairly and reasonably justify the conclusion that the cows suffered from Thimet poisoning rather than grass poisoning or any other sickness.

Defendant next argues that the trial court erred in receiving into evidence testimony concerning an experiment which showed the pH level of water in plaintiff's stock tanks in June 1975, and in permitting the plaintiff to adduce rebuttal evidence which he contends should have been made a part of plaintiff's case-in-chief.

Evidence relating to an illustrative experiment is admissible if a competent person conducted the experiment, and apparatus of suitable kind and condition was utilized, and the experiment was conducted fairly and honestly. Shover v. General Motors Corp., 198 Neb. 470, 253 N. W. 2d 299 (1977). See, also, Herman v. Midland Ag Service, Inc., 200 Neb. 356, 264 N. W. 2d 161 (1978). The trial court has a wide discretion in determining whether evidence relating to illustrative experiments should be received, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion. Hawkins Constr. Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N. W. 2d 643 (1973); Shover v. General Motors Corp., *supra*.

The results of the experiment were admitted in evidence in this case only for the purpose of showing the pH level of the water in plaintiff's tanks under conditions similar to those on May 15, 1975. We can-

not say that the trial court abused its discretion in admitting this evidence to the extent that its admission calls for reversal. The test results were of general relevance to issues raised in the action, and offered for a limited purpose.

We also find no error with respect to defendant's claim concerning improper rebuttal evidence. On rebuttal, plaintiff elicited testimony from his neighbor concerning the fact that the neighbor claimed he had never used Thimet on his land. Even assuming that such evidence would have been proper upon plaintiff's case-in-chief or should have been introduced at that time, it is within the sound discretion of the trial court to allow such evidence to be admitted on rebuttal. Cromer v. Farmland Service Coop, Inc., 198 Neb. 355, 252 N. W. 2d 635 (1977). The trial court clearly did not abuse its discretion in this case.

Defendant also argues that the county court improperly relied on the doctrine of res ipsa loquitur. The record does not support this contention. In any event the District Court, in reviewing the case, specifically stated that res ipsa loquitur had not been pleaded and therefore would not be considered.

Defendant's final contention is that plaintiff did not properly prove damages with respect to the loss or disability of his cows. As did the District Court, we find this contention to be without merit. There was evidence of the value of a healthy cow at the time of the poisoning which caused the death of six cows, as well as evidence of the diminished value of the two disabled cows. There was also evidence of the loss of value in the orphan calves. Having reviewed the record, we conclude that the evidence supports the award of $3,100.

We conclude that the District Court was not clearly wrong in deciding that the plaintiff had met his burden of proof with respect to the issues of negligence, proximate cause, and damages; and that no

reversible errors occurred with respect to the admission of evidence. We, therefore, affirm the judgment of the District Court.

AFFIRMED.