FLORENCE F. LANE, APPELLEE AND CROSS-APPELLANT, V.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, A FOREIGN CORPORATION,
APPELLANT AND CROSS-APPELLEE.

308 N.W.2d 503

Filed July 10, 1981.   No. 43270.

Wayne J. Mark of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellant.

Warren C. Schrempp and Steven Lefler for appellee.

Heard before KRIVOSHA, C.J., McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ., and RONIN, Retired District Judge.

PER CURIAM.

Florence F. Lane (Florence), plaintiff-appellee herein, brought this action in the District Court of Douglas County, Nebraska, against State Farm Mutual Automobile Insurance Company (State Farm), defendant-appellant, to recover for personal injuries received arising from a motor vehicle collision, and has sued her insurer under the uninsured motorist provision of three insurance policies owned by the plaintiff. After a jury trial, a verdict was returned in favor of the plaintiff in the sum of $28,450, and the court subsequently taxed costs and attorney fees in the sum of $5,000 for the services of plaintiff's counsel against the defendant. We affirm.

The facts surrounding this appeal are as follows. On September 19, 1977, at approximately 5 p.m., the plaintiff was driving a car which collided with one driven by Debra Bronson (now Debra Logan), but hereinafter referred to as Debra. Florence was driving her vehicle northbound on 90th Street, a thorough-fare consisting of two northbound traffic lanes and two southbound traffic lanes. A concrete median separates the opposing traffic lanes; however, two left turn lanes are cut into the median to provide access to local shopping centers and businesses. Prior to the accident, Debra was traveling southbound on 90th Street and entered the left turn median lane intending to cross the northbound traffic lanes and go into a nearby parking lot. As she pulled across the northbound lanes, she struck the automobile being driven by the plaintiff. Florence sustained injuries

to her neck, back, and knees and was transported by ambulance to a nearby hospital where she was treated and released. Debra was subsequently cited for negligent driving.

In her original petition filed in the District Court of Douglas County on March 1, 1978, the plaintiff named as parties defendant to the action State Farm, Debra Bronson, and Martha J. Bronson. On April 17, 1978, State Farm filed a demurrer to the petition, alleging that it failed to state a claim upon which relief could be granted for the reason that it failed to allege a judgment against Debra, who was alleged in the petition to be an uninsured motorist under the laws of the State of Nebraska. A hearing was held on the demurrer on May 1, 1978, and the court subsequently entered an order sustaining the demurrer on the basis of misjoinder of causes of action, and gave the plaintiff 14 days to amend her petition. See *Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981).

On May 9, 1978, plaintiff filed her amended petition naming State Farm as the only defendant, and praying for a judgment against State Farm for "all sums for which the insured, the plaintiff herein, shall be legally entitled to recover as damages from the owner or operator of the uninsured motor vehicle in question . . . ." State Farm subsequently filed a demurrer to the amended petition, alleging that it also failed to state a cause of action. After the hearing on the defendant's second demurrer was held, the trial court entered an order on May 25, 1978, overruling the demurrer. The defendant was given 14 days to answer plaintiff's amended petition. In its answer, State Farm admitted to issuing one policy of automobile insurance to the plaintiff and that said policy contained uninsured motorist coverage in the amount of $15,000. State Farm denied in its answer that Debra was an uninsured motorist, and alleged that the accident occurred as the proximate result of

contributory negligence on the part of the plaintiff.

Notwithstanding the denial contained in the answer to the amended petition filed by State Farm that Debra was an uninsured motorist, at the commencement of the trial of the matter on November 6, 1979, the following stipulation was entered into between the parties, as reflected by the record, as follows:

"MR. MARK: The next matter to take up is with respect to the answer of defendant's [sic] with the possibility that this amendment could be expanded to include the admission of the existence of other State Farm Insurance policies, upon confirmation of same defendant would at this time ask leave to amend its answer with respect to apparently there was some duplication, Paragraph 6 and 7, so as to delete Paragraph 6 and 7 and to add a new paragraph which would state that defendant admits at all times material here to [sic] Debra I. Bronson was an uninsured motorist, that the vehicle operated by Debra I. Bronson was an uninsured motor vehicle under the laws of the State of Nebraska and under the terms of the policy of insurance in force and effect between Florence F. Lane and State Farm Mutual Automobile Insurance Company.

"THE COURT: But in the event that you also amended to admit the two other policies, would you want to —

"MR. MARK: I would. To the extent that we can confirm this morning the existence of the two other policies, I would admit the vehicle was an uninsured vehicle under those policies as well.

"THE COURT: Under the terms of any policies of insurance that were in force and effect.

"MR. MARK: Fair enough, Your Honor, I don't have any problem.

"THE COURT: You would have no objection to that amendment?

"MR. SCHREMPP: No.

"THE COURT: Leave is granted and the petition

may be amended accordingly. The answer may be amended accordingly."

By virtue of the foregoing stipulation of the parties, and approval by the trial court, the issue of whether Debra was an uninsured motorist under defendant's policy and whether the vehicle was an uninsured vehicle thereunder appears to have been completely removed from the case. The record also reveals a further stipulation between the parties was subsequently entered into as follows:

"(At 11:35 a.m. on November 7, 1979, with counsel for the parties and the parties present, and the jury in the box, the following proceedings were had:)

. . . .

"MR. SCHREMPP: Your Honor, may we stipulate, Mr. Mark, that at the time of the collision involved in this case there were three policies of insurance totaling $45,000 of uninsured motorist coverage in force and effect at that time, and subject to distribution in this case.

"MR. MARK: It is so stipulated, Your Honor.

"THE COURT: Very well, the stipulation is accepted and received as evidence . . . ."

We also note that immediately prior to the commencement of trial, the defendant made an offer to confess judgment in favor of the plaintiff in the amount of $12,500, which offer, however, was rejected, and the case then proceeded to trial as an ordinary automobile negligence action.

At the close of the evidence adduced at trial, plaintiff moved for a directed verdict in her favor on the issue of liability, leaving to the jury only the issues of proximate cause of plaintiff's injuries and damages. This motion was sustained by the trial court. State Farm also orally moved for a directed verdict on the issues of liability and proximate causation, which motion was overruled by the court. The matter was submitted to the jury on the issue of damages, and the jurors were instructed that their verdict could not exceed the

total amount of coverage provided by the defendant.

On November 8, 1979, the jury returned a verdict in favor of the plaintiff and assessed the amount of her recovery in damages in the sum of $28,450. The trial court taxed the costs of the trial to the defendant. A motion by defendant for a new trial was overruled by the trial court. A subsequent hearing was held to determine the allowance of attorney fees for plaintiff's counsel, following which the trial court ordered that an attorney fee in the amount of $5,000 be taxed to the defendant. Plaintiff's counsel also filed a motion for new trial on the award of attorney fees only, which motion was overruled, and the issue is raised by plaintiff's counsel in his cross-appeal.

In its brief on appeal, State Farm assigns as error: (1) That the trial court erred in holding that the plaintiff need not plead and prove a judgment against the uninsured motorist in order to sustain her cause of action against State Farm, which was the effect of the trial court's overruling defendant's demurrer to plaintiff's amended petition; (2) That the trial court erred in sustaining plaintiff's motion for a directed verdict on the issue of liability and in refusing to submit the issue of plaintiff's comparative negligence to the jury; (3) That the trial court erred in overruling defendant's motion for a directed verdict on the issue of the causal connection between the accident and plaintiff's alleged injury to her right knee because of a lack of competent medical evidence stated to a reasonable medical certainty relating said injury to the accident; or in the alternative that the trial court erred in failing to instruct the jury that the plaintiff had the burden of proving the causal relationship between the injury and the accident to a reasonable medical certainty by direct and competent testimony before damages could be awarded; and (4) That the court erred in instructing the jury that State Farm was obligated to pay the plaintiff all sums which she

has sustained as damages as a proximate result of the accident, said sums not to exceed the sum of $45,000; and also in instructing the jury that its verdict may not in any event exceed the total amount of the coverage provided by State Farm, in the sum of $45,000.

The principal issue raised by the defendant in this appeal is whether an insured motorist must obtain a judgment against an uninsured motorist as a condition precedent to recovering against his insurer under an uninsured motorist insurance policy. The almost universal rule in this regard is that he need not. This question is reviewed at length in Widdis, *A Guide to Uninsured Motorist Coverage* § 7.16 (1969), wherein that eminent authority states at 269-70: "In several cases, insurance companies have argued that the claimant must secure a determination on the issues of fault and damages by suing the uninsured motorist before he may bring an action against the insurance company under the uninsured motorist coverage. This approach has been rejected, except in Georgia, South Carolina, and Virginia." In the 1980 Supplement to the above volume, in the same section, Professor Widdis states at 318-19: "Although it would seem to be a matter that should be beyond dispute under both the terms of the endorsement and in light of the historical development leading up to this coverage, the right of the insured to sue his own insurer without first bringing an action against the uninsured motorist continues to be raised as an issue. The reported opinions of the courts almost uniformly support the right of an insured to proceed directly against the insurance company." In the same section previously referred to, the author, in discussing the contrary rule adopted by Georgia, South Carolina, and Virginia, states at 320: "In addition — in an opinion which in the view of this writer represents a tortured interpretation of the applicable statute and endorsement provisions — the Supreme Court of Tennessee has

adopted this view." Without in any way intending to be exhaustive of the jurisdictions which have adopted the general rule, we cite as exemplary the following cases: *State Farm Mutual Automobile Ins. Co., Inc. v. Griffin*, 51 Ala. App. 426, 286 So. 2d 302 (1973); *Byrn v. American Universal Ins. Co.*, 548 S.W.2d 186 (Mo. App. 1977); *Associated Indemnity Corporation v. Cannon*, 536 P.2d 920 (Okla. 1975); *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973); *Home Ins. Co. v. Williams*, 252 Ark. 1012, 482 S.W.2d 626 (1972); *Ind. Ins. Co. v. Noble*, 148 Ind. App. 297, 265 N.E.2d 419 (1970); *Puckett v. Liberty Mutual Insurance Company*, 477 S.W.2d 811 (Ky. 1971); *Harthcock v. State Farm Mutual Automobile Ins. Co.*, 248 So. 2d 456 (Miss. 1971); *Grayson v. National Fire Insurance Company*, 313 F. Supp. 1002 (D. Puerto Rico 1970).

Our statute on uninsured motorist coverage appears as Neb. Rev. Stat. § 60-509.01 (Reissue 1978), and provides in part: "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 60-509, under provisions approved by the Director of Insurance, for the protection of persons insured thereunder *who are legally entitled to recover damages* from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom . . . ." (Emphasis supplied.)

In interpreting this provision, we have previously held that § 60-509.01 was enacted for the benefit of the innocent victim of a financially irresponsible motorist and it is to be liberally construed to fully

accomplish that purpose. *Protective Fire & Cas. Co. v. Woten,* 186 Neb. 212, 181 N.W.2d 835 (1970).

Prior to the enactment of § 60-509.01, uninsured motorist coverage was permissible at the option of the purchaser of the automobile liability policy. Section 60-509.01 is considered mandatory in the sense that insurance companies must offer uninsured motorist coverage with every automobile liability policy issued in this state, but the insured may reject the coverage. The required minimum coverage limits of such policies are set out in Neb. Rev. Stat. § 60-509 (Reissue 1978).

In support of its position that the insured motorist must first obtain a judgment against the uninsured motorist as a condition precedent to bringing suit against the insurance carrier under the uninsured motorist coverage provisions, State Farm cites *Crossley v. Pacific Employers Ins. Co.,* 198 Neb. 26, 251 N.W.2d 383 (1977). We conclude, however that *Crossley* is clearly distinguishable and not authority for the position taken in this case so far as Nebraska law is concerned. In *Crossley,* a Nebraska resident was involved in an automobile accident in Colorado and the accident was analyzed in terms of Colorado no-fault insurance laws, and not under § 60-509.01; and this court determined that the law of the place where the accident occurred governs not only the amount of the recovery but also the right to recover.

Defendant's argument was also rejected by the Supreme Court of Kansas in *Winner v. Ratzlaff, supra,* a case in which the plaintiff sought damages for the wrongful death of his wife, who was struck and killed by a car while walking across a street. Plaintiff sought recovery against his insurance carrier under the terms of his uninsured motorist policy. In construing the Kansas uninsured motorist statute, a statute similar to our own, the court stated at 63-65, 505 P.2d at 610-11:

"The purpose of legislation mandating the offer of

uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages [citation omitted]. As remedial legislation it should be liberally construed to provide the intended protection.

"40-284 contains no language stating that suit must first be filed or judgment obtained against the uninsured motorist. In a nutshell, the coverage mandated is that which the beneficiary 'shall be legally entitled to recover as damages' sustained at the hands of an uninsured motorist. We cannot translate this language into the requirement urged by appellees. Knowledge of the context in which this coverage developed forcefully attests to the fact it was in part promulgated to eliminate just such a condition precedent. . . .

"We construe the words 'legally entitled to recover as damages' to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability. In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc. [citation omitted].

"We have recognized the right of the uninsured motorist insurance carrier to intervene as a matter of right in an action brought by its insured against

an uninsured motorist where its application is timely and its interests are not being adequately represented [citation omitted]. Multiple litigation is never desirable and there is a public interest economically in avoiding it wherever possible to do so in a fair and workable manner. Everything considered, we hold it is not requisite to recovery against an uninsured motor liability carrier that judgment first be obtained against the uninsured motorist."

We concur with the aforementioned pronouncements of the Kansas Supreme Court as they apply to the factual circumstances in the present case; and we hold that it is not a prerequisite to recovery that judgment first be obtained against the uninsured motorist as a condition precedent to bringing suit against the insured motorist's liability carrier. To the extent that *Eich v. State Farm Mut. Automobile Ins. Co.*, 208 Neb. 714, 305 N.W.2d 621 (1981), holds to the contrary, it is overruled. In its brief on appeal, State Farm has pointed out certain problems of trial which could, and occasionally do, arise under the application of the majority rule which we adopt. Suffice it to say that if a change in the existing law is necessary or desirable, that change should be effected by action of the Legislature, and not by a tortured interpretation by this court. We also point out that under the Nebraska statute, as above quoted, there is no requirement whatsoever that a suit be brought and judgment obtained against the uninsured motorist as a precondition to an action against the insurance carrier.

We next consider defendant's assignment that the court erred in sustaining plaintiff's motion for directed verdict on the issue of liability and in refusing to submit the issue of plaintiff's comparative negligence to the jury. Considering first the question of whether the evidence in the record establishes the negligence of Debra, the uninsured motorist, the record reveals that on September 19, 1977, at approximately 5 p.m.,

a collision occurred between the automobiles driven by Florence and Debra as set out earlier in this opinion. Florence testified that she was traveling north on 90th Street in the curb traffic lane at a speed of 30 to 35 m.p.h., and that there was other traffic to the left of her and she did not see Debra's automobile until it hit her. The actual speed limit in effect at that location does not appear in the record, but the record strongly suggests that Florence was not exceeding the speed limit at the time.

Debra testified that she was traveling south on 90th Street and that she was generally familiar with the streets in that vicinity. She stated that she entered the southbound left turn lane with the intent of crossing the northbound lanes to go to a Kentucky Fried Chicken restaurant on the east side of 90th Street. She further testified as follows:

"Q. As you were stopped there in this traffic lane, what was your understanding as to how many traffic lanes there were for northbound traffic? A. Well, I at the time had thought that was the only lane of traffic. Q. As you sat here on the 19th of September, waiting to make your turn, you thought there was a left turn lane and one through traffic lane and that was all on 90th Street? A. Right. Q. After the gentleman signaled you to go, what happened? A. Well, I got halfway into my turn and I ran into the car of Florence Lane. Q. Which of these traffic lanes did the accident occur in? A. It actually occurred in the far righthand lane. . . . Q. Did you see the Lane vehicle at all prior to impact? A. No, I didn't. . . . Q. As you were executing this turn were you looking on to the south up 90th Street in the direction from which cars may come? A. I don't think I was looking up south, I was looking more or less straight ahead of me."

On cross-examination, Debra testified as follows: "Q. Well, Debra, you don't claim that Mrs. Lane did anything wrong, do you? A. No, I'm not saying that. Q. You never have claimed that? A. I know I'm at

fault." However, on motion of the defendant, the latter remark was stricken by the court as not responsive.

It seems clear that under the facts of this case Debra was clearly guilty of negligence in several other respects. As driver of the left turning automobile, Debra was required by statute not to turn her vehicle to the left unless and until such movement could be made with reasonable safety. Neb. Rev. Stat. § 39-652 (Reissue 1978). In doing so, she was also required by statute to yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard. Neb. Rev. Stat. § 39-636 (Reissue 1978). We have also held that a motorist must see what is in plain sight. *Davis v. Spindler*, 156 Neb. 276, 56 N.W.2d 107 (1952); *Caldwell v. Heckathorn*, 176 Neb. 704, 127 N.W.2d 182 (1964). Moreover, it is established law that a driver who fails to see another who is favored over him is guilty of negligence as a matter of law. *Schanaman v. Ramirez*, 206 Neb. 212, 292 N.W.2d 39 (1980); *Bonnes v. Olson*, 197 Neb. 309, 248 N.W.2d 756 (1976). There is little doubt that the evidence in the record established negligence on the part of Debra, or that reasonable minds would have found otherwise.

Defendant contends, however, that the trial court should have submitted the issue of Florence's contributory negligence to the jury. We conclude that the evidence clearly establishes that Florence was not negligent in the operation of her vehicle and that she was struck broadside by the car driven by Debra, who was attempting to make a left turn across the northbound traffic lanes. The facts and law cited in *Oberhelman v. Blount*, 196 Neb. 42, 241 N.W.2d 355 (1976), are in many respects similar to the facts and law involved in the instant case, and the language and reasoning of *Oberhelman* is persuasive. In the instant case, the plaintiff was as innocent a victim as was

the plaintiff in *Oberhelman*, and the uninsured motorist was as patently guilty of negligence by objective proof as was the defendant in *Oberhelman*. In *Oberhelman*, the defendant alleged that Oberhelman was negligent in six respects, to wit, (1) that he failed to keep a proper lookout; (2) that he failed to keep his vehicle under proper control; (3) that he drove at a high and dangerous rate of speed that was not commensurate with the conditions of the roadway or the condition of the traffic then existing; (4) that he failed to yield to defendant his half portion of the highway; (5) that he failed to yield the right-of-way to the defendant; and (6) that he failed to slow down, stop, or swerve his vehicle or take other means at hand to avoid the collision. This court ruled against all six of defendant's contentions, and found Oberhelman was not guilty of contributory negligence, stating at 48, 241 N.W.2d at 359:

"Having concluded that there was insufficient evidence to sustain an affirmative finding of contributory negligence on any one of the six specifications upon which the court instructed the jury, we find that the submission of plaintiff's contributory negligence and comparative negligence was error, which was not cured by the verdict for the plaintiff because the jury was thereby allowed to compare negligence and thus reduce the damages due plaintiff. Such error is therefore prejudicial.

"The finding of negligence on the part of defendant which proximately caused the collision is abundantly supported by the record."

Likewise, in the instant case, we conclude that the trial court acted properly in not submitting the issue of comparative negligence to the jury, and had no alternative but to direct a verdict in favor of Florence on the issue of liability.

We next consider defendant's contention that the trial court erred in overruling defendant's motion for a directed verdict on the issue of the causal connec-

tion between the accident and plaintiff's alleged injury to her right knee because of plaintiff's failure to adduce competent medical testimony stated in terms of the reasonable medical certainty as to that fact; also that the trial court erred in failing to instruct the jury that the plaintiff had the burden of proving the causal relationship between the alleged injury and the accident to a reasonable medical certainty by direct and competent testimony of competent medical experts. Defendant in this case relies heavily upon the testimony of a Dr. Bowman, an orthopedic surgeon in Omaha, who succeeded his former partner Dr. Max Kinney who originally treated Florence after the accident. Dr. Kinney was subsequently killed in a airplane accident, and Dr. Bowman testified at the trial in his place, both from Dr. Kinney's notes and records and from his own examination and consultation with Florence. Dr. Bowman testified at the trial, and in response to the question put to him on direct examination, "Doctor, can you state to a reasonable degree of medical certainty that the right knee complaints which she has as of her last visit, are related to the accident of September 19, 1977?" he replied, "Only by history. I have no other reason to think so, other than the fact that she told me so, and she told me so a year after the accident or something." However, Dr. Bowman also testified at the trial as follows: "Q. Doctor, did you determine whether or not there would be any permanent residuals as a result of this bruising of the knee and soft tissue strain to the back? A. Yes, I did. Q. What did you determine to be the nature of that, of that permanent involvement? A. It was my opinion that she had some permanent impairment of her neck, of five per cent; I think that would include the lumbar spine. Actually neck and lumbar spine. So it's really a permanent impairment of the spine of five percent, *and of her right knee* of seven per cent." (Emphasis supplied.)

Notwithstanding that Dr. Bowman testified that

he could not state to a reasonable degree of medical certainty that the injury to Florence's right knee, which she complained of, was related causally to the accident of September 19, 1977, he did testify from Dr. Kinney's notes. Dr. Bowman was asked: "Q. On the reports that Dr. Kinney had provided you, would you have any reason to doubt anything Dr. Kinney would say in those reports? A. No. Q. In early March of 1978, that visit, that Mrs. Lane made with Dr. Kinney, did Dr. Kinney make mention of whether or not she had complaints of both of her knees? A. Yes, he did. Q. What was that notation? A. She complains of both knees hurting her. Q. And given the fact that, again assuming that she was in an accident on September 19, would it be fair to assume that in early March of '78 the pain above her knees was related causally to the accident of September 1977?

. . . .
"THE WITNESS: Yes."

Florence also testified that when she was first sent to Dr. Kinney she complained of problems with her back and knees, stating: "My right knee was the one that had the cuts on them [sic], and my left knee was numb." Her husband, William J. Lane, also testified at the trial that when he got her home from the hospital he noticed her knees were cut open and she could hardly walk.

Defendant complains that the medical evidence with reference to the injury to Florence's right knee did not use the magic words "reasonable medical certainty." Although it is generally stated that medical testimony must be given with "reasonable medical certainty," we have been unable to find any Nebraska case which specifically so states. It has frequently been held that medical testimony couched in terms of "possibility" is not sufficient, although when such testimony is in terms of "probability" it is sufficient. We have held that "reasonable certainty" and "reasonable probability" are one and the same thing. In

*Marion v. American Smelting & Refining Co.*, 192 Neb. 457, 460-61, 222 N.W.2d 366, 368-69 (1974), we stated:

"Plaintiff devotes several pages of his brief to an attempt to determine whether this court has moved away from the rule of establishing causation to the degree of reasonable certainty to a more liberal rule of establishing causation to a degree of reasonable probability. Actually, this is a distinction without a difference.

"In Welke v. City of Ainsworth (1965), 179 Neb. 496, 138 N.W.2d 808, we defined 'probably' as 'reasonably; credibly; presumbly; in all probability; so far as the evidence shows; and, very likely.' We suggested that on many occasions in the past we had said 'an award of compensation in a workmen's compensation case may not be based on possibility, *probability*, or speculative evidence,' and suggested that a review of those cases indicated that the decisions would have been the same in every instance if we had merely said the award '"may not be made on possibilities or speculative evidence."'

"We further suggested that in the area of certain disabilities, it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Absolute certainty is not required. Medical diagnosis is not that exact a science. Even though in most instances a certain result may follow, to be accurate the medical expert hedges by the use of the word 'probably.' A review of the cases since Welke v. City of Ainsworth, *supra*, demonstrates that reasonable certainty and reasonable probability mean exactly the same thing when used in medical testimony."

We also note that the new Nebraska Evidence Rules, with reference to testimony by experts, do not require that medical experts testify "with reasonable certainty." The test would seem to be whether their specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue. Neb. Rev. Stat. § 27-702 (Reissue 1979) provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Likewise, Neb. Rev. Stat. § 27-703 (Reissue 1979) provides: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

In light of what we have stated above, we believe that the foundation for the medical testimony given in this case with reference to the injuries to Florence's right knee was sufficient, and also the fact that it was the result of the accident in question. The evidence presented a question of fact for resolution by the jury, and the jury did so. On appeal, it is not the province of the Supreme Court to weigh and resolve conflicts in the evidence or weigh the credibility of the witness; these functions are for the trier of fact. *Commodity Traders, Inc. v. Palmer*, 203 Neb. 667, 280 N.W.2d 49 (1979); *Mustion v. Ealy*, 201 Neb. 139, 266 N.W.2d 730 (1978).

Finally, the defendant contends that the trial court committed error by instructing the jury that it was limited in returning a verdict, if any, in an amount not to exceed $45,000. Defendant claims that this instruction was prejudicial. The record reveals, however, that counsel for the defendant made no objection to the allegedly prejudicial instructions at the instruction conference. In fact, the record reveals that both parties stipulated to the court, in front of the jury, that there were three policies of insurance totaling

$45,000 in uninsured motorist coverage. At no time during the instruction conference or at trial did counsel object to the court's proposed instructions, although ample time and opportunity to examine the instructions and interpose such an objection was presented defense counsel. This court has held that when a litigant has approved instructions in the trial court, either by word or act, he cannot thereafter effectively complain of instructions given. *Exchange Bank of Gibbon v. Ashley*, 191 Neb. 259, 214 N.W.2d 632 (1974); *Swearingen v. Sloggett*, 189 Neb. 482, 203 N.W.2d 442 (1973). Our review of the instructions given in this case indicates that they fairly submitted the issues to the jury. Instructions must be taken as a whole and construed together, and where the instructions covered the issues and fairly submitted the case to the jury, the jury's verdict will not be disturbed unless it is clearly erroneous. *Hayes v. Anderson Concrete Co., Inc.*, 186 Neb. 771, 186 N.W.2d 477 (1971); *Schmidt v. Knox*, 191 Neb. 302, 215 N.W.2d 77 (1974).

Counsel for the plaintiff has cross-appealed to this court, alleging that the award of $5,000 in attorney fees made by the trial court for his services to the plaintiff was inadequate. He filed his application for an attorney fee under Neb. Rev. Stat. § 44-359 (Reissue 1978), and a separate hearing was held before the trial judge subsequent to the return of the verdict by the jury. Plaintiff's attorney testified that he had a contingent fee contract with the plaintiff for one-third of the amount of her recovery. He argued that the policy behind the legislation awarding attorney fees in actions brought against an insurance company upon a policy issued by them was to make the plaintiff whole, and not to penalize the successful party by requiring the payment of attorney fees out of her recovery. Plaintiff's counsel argues, therefore, that he should be entitled to an attorney fee award under the foregoing section in sufficient amount as to leave the plaintiff the gross amount of her recovery awarded

by the jury, which in this case amounted to $28,450. Plaintiff's counsel has cited no legislative history of the statute in question which bears out his statement with reference to the alleged purpose of the act, nor have we been able to find such an expression of intent.

In its order awarding plaintiff the sum of $5,000 as attorney fees, the trial court cited the case of *Ruby Coop. Co. v. Farmers Elevator Mut. Ins. Co.*, 197 Neb. 605, 250 N.W.2d 239 (1977), for the proposition that the reasonable sum allowed as an attorney fee under the statute to a beneficiary suing to collect insurance proceeds has no relation to the fee contracted for on a contingency basis. However, an opinion by this court rendered in *Prucka v. Papio Nat. Resources Dist.*, 206 Neb. 234, 292 N.W.2d 293 (1980), issued after the order of the trial court with reference to the fee for plaintiff's attorney, states that the court *may consider* the actual agreement existing between a litigant and his attorney, including an obligation to pay a contingent fee, particularly if such contract is customary in the locality. The opinion further provides that while the actual agreement is neither the sole factor nor a factor to be given any greater weight than any of the other factors, it may, nevertheless, be considered. However, in the earlier case of *Schimonitz v. Midwest Electric Membership Corp.*, 182 Neb. 810, 157 N.W.2d 548 (1968), which case involved the award of an attorney fee under Neb. Rev. Stat. § 76-720 (Reissue 1976), which deals with eminent domain proceedings, this court stated: "However, we do not interpret the reference in section 76-720, R.R.S. 1943, to a reasonable fee to mean a contingent fee. The fee contemplated by this section is one that is reasonably compensatory for the services rendered. There is no showing in the record of the time spent by counsel in preparation for trial or otherwise. The record indicates a trial of 2 days duration. Any fee allowed must be based on an estimate of the time and preparation required for

the record before us." *Id.* at 816, 157 N.W.2d at 552.

In the instant case, at the hearing for the allowance of the fee to be awarded to plaintiff's attorney, as well as in his brief on appeal, the plaintiff's attorney testified and stated that he did not keep any time records in this case, and generally speaking did not keep time records. In the present case, we cannot say that the award of the attorney fee determined by the trial court after a hearing on the matter was unreasonable or an abuse of discretion. However, we note that a trial court ordinarily has a better opportunity for practically appraising the situation, and an appellate court will only interfere to correct a patent injustice where the allowance is clearly excessive or insufficient. *Omaha Paper Stock Co. v. California Union Ins. Co.*, 200 Neb. 31, 262 N.W.2d 175 (1978). While the record reveals that able counsel for the plaintiff in this case conducted the litigation with great skill, and the results of his efforts reflect his diligence and ability, as well as the time devoted in the preparation and trial of the case, nevertheless we are unable to state that the fee awarded him by the trial court was not a reasonable fee, and hence we affirm the judgment of the trial court in that regard. There can, of course, be little question that the plaintiff's attorney is entitled to recover on his contingent fee contract with his client in the amount of one-third of the recovery in the amount of $28,450, or a total of $9,483. The trial court awarded a fee of $5,000, leaving a balance remaining of $4,483. The manner and source from which plaintiff's attorney collects the balance due him is not a matter for this court to decide, but is strictly a matter between the attorney and his client. However, we award plaintiff an attorney fee for services in this court in the amount of $2,000.

No errors appearing in the record, we conclude that the judgment of the District Court must be, and hereby is, affirmed.

AFFIRMED.

CLINTON, J., dissents.

HASTINGS, J., concurring.

I concur in the result reached by the majority today. The requirement of one or two lawsuits in uninsured motorist cases presents no problem of any deep philosophical significance, and I would prefer to opt for a rule of simplicity and general acceptance.

However, in applying the rule announced today, I believe that it is essential to require any such trial to be bifurcated so as to avoid the complications resulting from one jury trying to decide tort liability and damages on the one hand and the contract liability of the insurance company as well.